# DECISIONS

# SUPREME COURT OF MISSOURI.

## SECOND JUDICIAL DISTRICT.

### APRIL TERM, 1838.

---

## ELZABETH DAVIS v. THOMAS J. DAVIS.

1. **A.** died, leaving a widow and one son. A short time previous to his death, he made a will, leaving all his estate, real and personal, to his son, except so much as would be sufficient to support his wife. On the same day, he, by deed, conveyed to his son five slaves, the most valuable part of his estate. On the death of A, his widow renounced the will and claimed her dower not only in the real estate, but in the slaves conveyed by the deed above mentioned; and applied to the chancellor for general and special relief. It was held, on the above state of facts:

2. 1. That the powers of the county court are clearly inadequate to relief in cases of this kind; and the allegations of fraud in the deed, represented in the bill to be a will in disguise, and made with a view to defeat the widow's right of dower, give the chancellor complete jurisdiction.

3. 2. The widow's right to dower in slaves, as fixed by the act of Feb. 5, 1825, is not affected by the act of Feb. 19. 1825, concerning wills, which seems to authorize a disposition by will of slaves and personal property, without being subject to the widow's dower. Such a construction would, however, conflict with the spirit and letter of the first named act, and the omission of slaves in the saving clause of the last named act is probably owing to inadvertence.

4. 3. The deed, if made as charged in the bill, with intent to defeat the widow's dower, can no more do this than the will, and a court of chancery will hold it null and void for any such purpose.

5. TOMPKINS, Judge, dissented on this last point, and held that the deed was good against the testator and all claiming under him; and as the slaves were by the deed disposed of before the death of the testator, the widow could not claim a dower in them.

*U. Wright,* for appellant, cited:

5 Johnson's Chancery Reports, page 482; 2 Vernon, 612; 2 Atkins, 62 and 377; 1 Atkins, 63; 5 Munford, 482; 1 Russell, 485; 1 Fonblanque, 269; 3 Coke, (book 3) 328, top, 325, 333, note G, 328.

*E. Bates,* for appellee, cited:

Revised Code of 1825, page 790; Rev. Code of 1835, page 617; 7 Peters' Reports, (Brasher v. Wash,) 616.

McGIRK, Judge, delivered the opinion of the court.

*Statement.*
A. died, leaving a widow and one son. A short time previous to his death, he made a will, leaving all his estate, real and personal, to his son, except so much as would be sufficient to support his wife. On the same day, he, by deed, conveyed to his son five slaves, the most valuable part of his estate. On the death of A. his widow renounced the will and claimed her dower, not only in the real estate, but in the slaves conveyed in the deed, above mentioned, and applied to the chancellor for general and special relief. It was held, on the above state of facts:

Elizabeth Davis filed a bill in chancery, in the circuit court of Marion county.

The bill states, that in the year 1801, the complainant was married to one Shadrach Davis, and that she had by that marriage one son, Thomas J. Davis; that she lived with Shadrach Davis till the 7th of May, 1832, when her husband departed this life, possessed of an ample estate and property. The bill states, that in the latter part of the life of said Davis he became much diseased with the consumption, and was bed-ridden for a long time, and finally died at the time aforesaid. The bill then charges, that a short time before his death, on the 19th day of March, in the same year, he executed his last will and testament, by which he devised to his son Thomas, the only child of the marriage, all his property, real and personal, after the payment of his debts, except so much as would support his wife, said Elizabeth, during her life, with a request contained therein that she should live with her son Thomas during her life. The will is made an exhibit. The bill also shows that the said will was duly proved, and that Thomas Davis, as executor, took upon himself the execution of the same.

The bill then charges, that on the same day, and at the same moment the will was executed, said Shadrach executed a deed to Thomas J. Davis for five valuable negroes, to wit: Fielder, sr., Fielder, jr., John, Darcus, and Anthony, which deed sets forth on its face, that said Thomas had taken up that day a note of said Shadrach's, due one Moses D. Bates, for the sum of two hundred and thirty-one dollars, and substituted his own note in its place; and that in consideration of the premises, and the

further consideration of natural love and affection, said Shadrach conveyed said negroes to said Thomas as his own absolute property; a copy of which is exhibited.

The bill further states, that after allowing her lawful share of her husband's other property, the said slaves, so conveyed by deed, were by far the most valuable part of the estate of said Shadrach; and that the part passed by the will was not of any great value; and that the remainder of the slaves were almost valueless, and almost a charge upon the estate. The bill states, that the complainant renounced the provisions and benefits of said will in her favor. The bill also shows, that the complainant made an ineffectual attempt to compel the said Davis, as executor, to inventory the said five negroes as part of the estate of Shadrach Davis, which he refused to do, but claimed the same as his property under the deed. The bill then charges, that said deed was made in fraud of her dower right in the estate of her husband; and that the same was a fraudulent contrivance to prejudice her rights; and that the same was made with the avowed design of depriving her of her rightful portion of her husband's estate, which she would have been entitled to had her husband died intestate. The bill charges, also, that the deed was made with the intent of preventing the complainant from obtaining her portion of the estate, in case she should renounce the will; and the defendant was told, that in case the will of S. Davis did not suit the widow, she might renounce it, and have her share, as in case of intestacy.

The defendant took counsel here to cut off the complainant of her just share. The bill states, that at the time the deed and will were executed, the said Shadrach was in a very low condition, and in the last stages of consumption, bed-ridden, and had to be held up when he executed, with conscious certainty of approaching death, he having then no hope of recovery; that at the time the deed was made, the defendant lived in the same room with his father, and worked the negroes aforesaid; and that there was in fact no delivery of the slaves, as pretended by said deed. The defendant and said negroes remained on the place till the father died, as above stated. The bill charges, that the pretended consideration of the deed was fictitious; that M. D. Bates was present when the deed and will were made; and, also, the bill charges that the will burdened all the property of testator with the payment of debts; and the bill avers that the consideration put in said deed was in fact not the motive

moving to the same, and was only colorable; and that the whole object was to defraud the complainant of all interest in the slaves arising to her as dower, and that such was the design of the defendant in procuring and accepting the deed.

The bill charges, that defendant is in possession of the slaves, claims them as his own, and refuses to assign to the complainant dower in them; and that the property of the testator is ample, besides these slaves, to pay all his debts. The bill charges a combination between the father and the son to defeat the wife in regard to her dower in the slaves, and calls the deed a will in disguise. The bill alleges there is no remedy at law, and prays general and special relief. The defendant demurred to the bill for want of equity. The circuit court sustained the demurrer, and dismissed the bill, and the cause is brought here by appeal.

Before I proceed any further, I will remark that an interlocutory decree was had at one term, and at the next term the same was opened, and the cause afterwards heard on the merits. The appellant assigns error on the opening of the decree. From the view which I shall take of this case hereafter, I deem it unimportant to dispose of this point. The error assigned is general, that the decree should have been for the complainant.

1. That the powers of the county court are clearly inadequate to relief in cases of this kind; and the allegations of fraud in the deed, represented in the bill to be a will in disguise, and made with a view to defeat the widow's right of dower, give the chancellor complete jurisdiction.

With a view to bring up the merits of this case, as argued by Mr. Bates for the appellee, and by Mr. Wright, for the appellant, I shall begin with the objections made by the appellee's counsel to the equity of the bill.

1. The first objection is, that if the complainant has any right at all, it is at law, and that the administration act furnishes a remedy.

2. The complainant bases her right on the supposition that a right to dower and distribution is, in the lifetime of the husband, a vested right. That the assumption is, the husband could not bequeath these slaves by will, and that he could not pass them by deed.

3. That the husband in this case had full power to pass these slaves by a will, and of course by a deed; and to prove this, the counsel relies on the statute of 1825— R. C, 790.

4. That the general owner of property may sell the same, destroy, or give the same away at pleasure—see 7 Pet. Rep. 616.

The counsel for the complainant alleges that, by the statute of the State and by the common law, courts of equity can entertain dower bills, and especially a bill like

the present; and for this purpose he cites 5 Johnson's Chan. Rep. 482, where the chancellor says the right is at law, in New York; yet, if the chancery court gets lawful jurisdiction of the same, by reason of impediments being thrown in the way, that it will entertain the suit and assign dower. This has been well considered by the court, and they are unanimous that this bill, so far as it regards jurisdiction, is well brought. I am of opinion that a court of law cannot grant the relief sought here. The bill alleges a fraud on the rights of the wife, by a contrivance to get round the laws regarding wills and dower. Now, if it be true that the wife, notwithstanding the will which passed all the property to the son, except a support for the wife, is entitled to her third of the slaves, then the deed, if made to elude that which might arise to the wife, was a fraud; and of this the court of chancery has jurisdiction. The counsel for the appellee insists, however, that the county court might compel this man to inventory these slaves as the property of the estate. This, we see by the bill, and the decision of this court between the same parties, cannot be done where the executor claims property in the thing demanded to be inventoried, and shows such strength of title as this deed shows on its face—see the case of Davis v. Davis.

The county court has no adequate means or power to enable it to declare this deed void, nor to order it to be delivered up and cancelled, and to enforce that order. Its jurisdiction is defective on these matters. Though that court has great powers, I do not conceive it can do this. But a court of chancery can do this, if sufficient cause exist. It may be that a court of chancery may find it difficult to get on with the assignment of the dower. But if that court should think so, it may set aside the deed and dismiss the bill as to the balance; then the county court can proceed.

I will now pass to the merits of the bill; and the first question is, can the husband, by will, pass away all his personal property, as has been done in this case, in prejudice of the wife's third? The statute of wills—Rev. Code of 1825, page 790, enacts, that every person, of the age of twenty-one years and upwards, shall have power by last will and testament, to devise his lands, tenements, and slaves, at his will and pleasure, which he or she shall have at the time of his or her death; saving to the widow of such testator her legal right of dower in such lands and tenements, rents and annuities, which shall not be prejudiced by any such devise thereof. With regard to the

2. That the widow's right to dower in slaves, as fixed by the act of Feb. 5, 1825, is not affected by the act of Feb. 19, 1825, concerning wills, which seems to authorize a disposition by will of slaves and personal property, without being subject to the widow's dower.

APRIL TERM,
1838.

Davis v. Davis.

Such a construc-
tion would, how-
ever, conflict with
the spirit and let-
ter of the first
named act, and
the omission of
"slaves" in the sa-
ving clause of the
last named act is
probably owing to
inadvertence.

enacting part of the section, it is to be observed, that the power is given to devise lands, tenements, annuities, rents, hereditaments, and slaves. The wife's legal right of dower is saved and excepted from the power of the will, in lands, tenements, rents, and annuities, but hereditaments and slaves are not protected from the power of the will; nor does the statute any where prevent the testator from bequeathing away from his wife all personal property. This statute was passed February 19th, 1825, and the question made is, whether the husband can devise slaves discharged of the wife's dower? I feel well satisfied he cannot.

The statute is no doubt carelessly worded, and this is apparent from the fact that hereditaments are left out of the saving clause. Whatever reason might exist in the view of the legislature to induce them not to save the widow's dower as to slaves, I cannot perceive any reason why hereditaments should not be the subject of dower as well as rents and annuities. Rent is a certain fee paid for the use of lands or houses, fisheris, offices where inheritable, or of any thing else inheritable. A hereditament is any thing inheritable or that goes to the heir. They are of two kinds: corporeal, such as have actual matter belonging to them, and such as consist of mere abstract right. In England they are of great value, and in time they will be so in Missouri. Hereditaments being often as valuable as slaves, though not so numerous, and being omitted in the saving clause, to say the least of it, furnishes strong evidence of carelessness, rather than of a design to omit either of them. But, perhaps, it has justly been argued by counsel that the statute cannot now be amended by this court so as to make the saving more large. But the counsel for the complainant insists, that the seeming defect in the saving clause is well helped out by the dower act; both acts, in part, being on the same subject, are to be read as though they were both under the same enacting clause. I consider the rule correct, and applicable to this case. The dower act was made about ten days before the act respecting wills, but that circumstance is, I think, of no importance in this matter. The two acts being considered as one, the matter stands thus: The act respecting wills gives the husband a general power to pass lands, slaves, &c. &c. to whomsoever he pleases. But that part of the statute giving the widow dower, gives her a third of these very slaves; it also gives her dower in hereditaments, but says nothing about rents and annuities, (an-

other evidence of carelessness.) The dower part of the statute says every widow shall be endowed of the lands, tenements and hereditaments, whereof her husband, or other person for his use, was seized, &c , and of all the personal estate and slaves, belonging to her husband at the time of his death, which remain after the payment of debts. Here is a solemn right of dower by the first part of the statute. I am of opinion that it was not necessary at all to have any saving in the part giving the husband power to make a will. It is the saving clause which makes the difficulty. If it were not for the saving clause, it would be difficult to conclude that the lawmakers, after having spent a portion of their time to provide a sure support for the widow, after the death of her husband, should suddenly become disgusted with the work of their hands, and being too dastardly to destroy it openly themselves, should raise up a power in some third person to do it. I do not believe it. But I read the statute as saving all the dower the law gives the widow. It then submits the balance to the free will and pleasure of the husband, to be disposed of as he pleases. I then hold, that if the slaves contained in the deed to Thomas Davis were the property of Davis at the time of his death, the dower arises on them.

But it is argued that they were not his at the time of his death by reason of the deed. I admit that, so far as the mere form of right is conserned, they were not his. Here the form hides the substance, and was intended to do it. But in a court of chancery, no matter how cunningly and deeply covered and concealed the right may be, the deep searching justice of the chancellor, with his argus eyes, will uncover it. The chancery commands the right to remain where it should have been till all the purposes of justice are accomplished. So, in this case, the chancellor will re-deliver the property to the husband, until the wife is endowed, and when that is done, the residue will be turned loose, subject to the action of the law. There seems nothing strange or new in this. Then, the remaining question is, did the parties make the deed to defeat the wife of dower? The bill avers it was so, and shall the defendant profit by it to the prejudice of his mother's right of dower? The bill charges, that the will and deed are only two parts of one transaction. I view it so. The parties intended and expected that if the will could not defeat the dower, the deed would do it, and that if neither could separately, both should conjointly. The bill charges, that the consideration or pretence

3. The deed, if made as charged in the bill, with intent to defeat the widow's dower, can no more do this than the will, and a court of chancery will hold it null and void for any such purpose.

thereof, that T. Davis had that day become bound for a debt, was a mere contrivance to slip the same in for color. If this be true, it ought not to stand; and as to the consideration of natural love and affection. it is a most excellent consideration, but, like all considerations, it is only good when it *is* what it *seems* to be. The consideration of a deed is the reason for making the same, whatever that may be. The bill says, the true reason why the deed was made, was the desire and hope to defeat the widow of her dower. My opinion is, this consideration, though good in general. is of no value in this case. The bill charges that the deed is a will in disguise. I think it is so. The authorities abundantly satisfy me that such things are fraudulent as to the dower, and therefore void—see the authorities cited by the counsel—5 John. Cha. Rep. 482; 2 Vernon, 612; 2 Atkins, 62, 377; 5 Munford, 482; 1 Russell, 485.

I do not see any other matter in this case requiring attention.

I am of opinion the decree of the circuit court ought to be reversed; Judge EDWARDS concurring, the same is reversed.

TOMPKINS, Judge.—The statement of the case being made by the president of the court, I will proceed to give the outlines of my opinion.

Thomas J. Davis being appointed executor of the deceased, the widow is driven into a court of chancery for relief; for had any other person been appointed executor, there is no doubt resting with me but he might have prosecuted his claim against Davis, and have tried the right of property in these slaves in a court of law.

The act of 19th February, 1825, concerning wills and testaments, gives the power to devise real estate, and to bequeath personal estate, saving to the widow of such testator her legal right of dower in such lands, &c., which shall not be prejudiced by any devise thereof.

The act of 5th February, 1825, concerning dower, gives to the wife of the deceased, leaving children, one third of his slaves for life, and because it is not provided in the act of 19th February, 1825, concerning wills, above cited, that the wife's legal right of dower in slaves or personal property shall not be prejudiced by any bequest thereof, as it is by the same act provided that her right of dower in land shall not be prejudiced by any devise thereof; it is contended that the husband has the right to bequeath his personal estate, and consequently,

these slaves, to the prejudice of his wife's right of dower therein.

To me it appears plainly and evidently enough that the negative words used in the latter part of the first section of the act concerning wills and testaments, to wit: "Saving to the widow of such testator her legal right of dower in such lands," &c., were by no means necessary to save her rights against any capricious will of her deceased husband, seeing that the act of 5th February, 1825, concerning dower, had already conferred this right on her. My opinion on this subject would not have been changed, even had the act concerning wills and testaments been ten years older or younger than that concerning dower. They may both stand together very well, and they ought to do so. Every testator does not leave behind him a widow, and if he does, he disposes of his estate by will, subject to her rights of dower. It is then my, opinion, that the husband had not a shadow of right to bequeath these slaves, to the prejudice of her right of dower in them.

What, then, was the effect of the deed? The act concerning dower, above cited, gives to the widow, when there are children, (as here,) one third part, during her life, of all the slaves of which the husband was possessed, and which remain undisposed of.

If, then, this deed was valid against the testator in his lifetime, the property was not undisposed of at his death; and, consequently, his wife could not have been endowed thereof. That it was valid against the testator in his lifetime, I entertain no doubt. Had he lived twenty years after the execution of that deed, he would at any part of that time have come with a very ill grace into a court of either law or equity to claim these slaves; alleging that, by that deed, he had intended only to defeat his wife of the right of dower in them, and not to give them to his son.

TOMPKINS, Judge, dissented on this last point, and held that the deed was good against the testator and all claiming under him; and as the slaves were by the deed disposed of before the death of the testator, the widow could not claim a dower in them.

The decree of the circuit court ought, in my opinion, to be affirmed.