## RICE v. WADDILL, et al., Appellants.

### Division Two, March 28, 1902.

1. **Conveyance To Defeat Dower:** EQUITABLE RELIEF. A conveyance of land or personalty by a husband, in contemplation of death, without consideration, and for the purpose of defeating the wife's dower, is fraudulent and void as to her, and courts of equity have jurisdiction to grant relief in such cases.

2. ———: EXPRESS PROVISION: ANTENUPTIAL CONTRACT. A deed made by the husband to the wife with the design to exclude her from a dower interest in his estate to have that effect must contain an expressed provision that it is made in lieu of dower or a full discharge of dower. A mere conveyance to the wife prior to marriage of certain lands is not an antenuptial contract in lieu of dower.

3. ———: LAST SICKNESS: A man over seventy years old, had suffered a stroke of paralysis, was ruptured, had varicose veins, was

so feeble that he required support to avoid teams in crossing the street, complained of pains in his head which he said were killing him, complained that he had dark things before his eyes which he said was a bad sign, and stated that several of his family had died that year and that he did not expect to be living at its end. He married in February, having the previous day conveyed to his wife $1,500 worth of land, and also secretly conveyed all his lands in this State to his children, the deeds not being recorded till July. During that month he parceled among his children $40,000 which he had in another State, and died in October. *Held,* that the gifts must be understood as having been made "during his last sickness."

4. ———: PURPOSE OF GIFTS. Before marriage the husband secretly conveyed all his Missouri lands to his children, the deeds, however, not being recorded till afterwards, except he gave his wife a tract worth $1,500, retaining a life interest in himself. He had become heir to an estate estimated at $70,000 in another State, and contracted to assign it to a nephew for $40,000, and under the pretense of going to a hospital in that State for medical treatment went to the city where the estate was, and there received the $40,000, and secretly distributed it among all his children except one, by drafts drawn on banks in that city, and on the amounts sent to three of them he impressed a trust that they should each give a certain sum towards the maintenance of an insolvent son, and thus he denuded himself of an entire estate of $90,000 except about $2,500, although he had never until that year shown any generosity towards his children, and stated his purpose in doing so was that he wanted to see his children enjoy his property in his life time. He collected up to the time of his death, which he constantly believed to be near at hand, the rents on the land he had conveyed to his wife the day preceding his marriage. Three months after their marriage they disagreed, and two months later he distributed his personal estate, and a few months later he died. *Held,* that these voluntary gifts were made with the view of defeating the wife's dower, and the children having actual knowledge of his purpose, they must be held to account to her for dower in the property they received from him.

5. Dower: INDEFEASIBLE. Dower does not depend on the whim or caprice of the husband, but is a statutory right.

6. Efforts to Defeat Dower: STATUTE CONCERNING ANTENUPTIAL WILLS: DEEDS IN CONTEMPLATION OF DEATH. The sense and intent of the statute which avoids antenuptial wills in so far as they affect dower, apply not only to wills technically but to deeds made with

Rice v. Waddill.

the purpose to defeat the wife's dower. Besides, the disposition by deed of property by a grantor who believed death near at hand, is essentially a disposition by will. The deed in such case must be in expectation or contemplation of death, and not necessarily in the very article of dissolution.

7. ———: WIDOW AS WITNESS: INCOMPETENCY WAIVED BY DEPOSITION. The incompetency of the widow, in a suit to compel her husband's children to account to her for her dower interest in property conveyed by him to them during his lifetime, is waived by the taking of her deposition by the defendants, whether the same is filed in court or not.

8. Testimony: UNAVAILING GENERAL OBJECTION. An objection to proffered testimony that it is incompetent, irrelevant and immaterial, amounts to no more than, "I object."

9. Efforts to Defeat Dower: LETTERS FROM HUSBAND TO WIFE: COMPETENCY: PUBLIC POLICY. Letters from the husband to the wife, which tend to corroborate the claim that at the time he wrote them he was secretly and clandestinely scheming to defraud her of her marital right to dower, are admissible on the ground of public policy to unearth the fraud.

10. Grantor's Fraud: BINDING ON VOLUNTARY GRANTEE. The frauds of a husband who has made voluntary conveyances and gifts to his children for the purpose of defeating his wife's dower, are admissible against them.

11. ———: SELF-SERVING STATEMENTS. Self-serving statements by the grantor of voluntary gifts and deeds, alleged to have been made with the intent to defeat his wife's dower, are incompetent evidence in a suit by her to compel the beneficiaries thereof to account to her for her dower interest.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* · Judge.

AFFIRMED.

*H. F. Millan* and *Ben Eli Guthrie* for appellants.

(1) The alleged deposition was not evidence and could not be made such, or used on the trial, and defendants were not attempting to use it. Sec. 2904, R. S. 1899. Unless

the deposition is regularly taken and filed in the cause, it does not waive competency of the witness. Borgess Co. v. Vette, 142 Mo. 142. Plaintiff at the trial was only examined in relation to things concerning which the statute makes her incompetent. There is no evidence that she was examined as to such things in the alleged deposition. If she was not·so examined, the deposition did not waive her incompetency. The burden was on plaintiff to show her competency, and this they failed to do. The admission of testimony was error. Tierney v. Hannon's Ex., 81 Mo. App. 488; Ess v. Griffith, 139 Mo. 322; In re Estate of Soulard, 141 Mo. 642. Even though the alleged deposition waived her incompetency, yet it did not allow her to testify to communications between her and her husband. That is against public policy. Mahner v. Linck, 70 Mo. App. 387; Hall v. Hall, 77 Mo. App. 606; State v. Ulrich, 110 Mo. 364; Kane v. Kane, 79 Mo. App. 339; Bowman v. Patrick, 32 Fed. 368. (2) The widow takes "a share in the personal estate belonging to the husband at the time of his death. Sec. 293, R. S. 1899. There is no inchoate right of dower in personal property. Crecelius v. Horst, 89 Mo. 356; Brandon v. Dawson, 51 Mo. App. 237. (3) To enable the widow to recover from the donee, it must be shown that the gift was made in expectation of death and for the purpose of defrauding her of her dower interest therein. The statute does not attempt to interfere with the right of the husband to dispose of his property as to him seems good. The presumption of law is that such disposition is valid and binding upon the heirs and widow. The gift must be shown to be testamentary in its nature—that is, it must have been intended to have its operative effect after the death of the donor. McLaughlin v. McLaughlin, 16 Mo. 250; Tucker v. Tucker, 29 Mo. 252; Stratt v. O'Neil, 84 Mo. 69; Crecelius v. Horst, 89 Mo. 359; Brandon v. Dawson, 51 Mo. App. 242; Cameron v. Cameron, 10 S. & M. 394; Lines v. Lines, 142 Pa. St. 149; s. c., 24 Am. St. Rep. 427. There must be actual purpose

and intent to defraud.   The gifts were neither testamentary nor made to defraud the wife of her dower.   The fact that they were made pursuant to an agreement with his former wife, the mother of these children, and to a consequent understanding in the family, relieves the transaction of both of these imputations. Crecelius v. Horst, supra; Baker v. Chase, 6 Hill (N. Y.), 482; Hamilton v. Smith, 57 Iowa 15; s. c., 42 Am. Rep. 39; Dudley v. Dudley, 8 L. R. A. 814; Fennessy v. Fennessy, 84 Ky. 519; s. c., 4 Am. St. Rep. 210; Murray v. Murray, 8 L. R. A. 95; Walker v. Walker, 66 N. H. 390; s. c., 27 L. R. A. 799; 49 Am. St. Rep. 676; Patterson v. Patterson (Ky.), 24 S. W. 880; Butler v. Butler, 21 Kan. 521; s. c., 30 Am. Rep. 441; Kinne v. Webb, 54 Fed. 40; Clark v. Clark, 183 Ill. 448; s. c., 75 Am. St. Rep. 117.   (4)   To constitute a gift *causa mortis* the gift must be made by a person by whom death is believed on reasonable grounds to be very near—"in last sickness"—and who makes the gift in view of, and because of his approaching death. Keyl v. Westerhaus, 42 Mo. App. 49; Tygard v. McCord, 54 Mo. App. 85.   And with the intent that it take effect at death. Allen v. Allen, 75 Minn. 116; Brandon v. Dawson, supra. "In expectation of death" implies belief in impending death, imminent death, *in extremis.*   If it does not mean *in articulo mortis,* it requires a present realization of the overshadowing presence of the death angel's dark wing.   The probabilities must be death in the immediate, not the remote future.   "Impending death" and "impending dissolution" seem to be favored expressions with the courts. Brandon v. Dawson, supra; Hatcher v. Buford, 27 L. R. A. 508; Keyl v. Westerhaus, supra.   If it appear that an absolute and irrevocable gift was intended, then the fact that the donor was on his death bed, would not convert it into a gift *causa mortis.*   And though a gift be made in anticipation of death, but is not conditioned upon that event, it is a gift *inter vivos.*   Herschal v. Maurer, 69 Wis. 576; s. c., 2 Am. St. Rep. 757; 14 Am. and Eng.

Ency. Law (2 Ed.), 1014, 1052, 1053; Basket v. Haskell, 107 U. S. 614; Nolan v. Hardin, 43 Ark. 307; Hatcher v. Buford, 60 Ark. 169; s. c., 27 L. R. A. 507; Edwards v. Jones, 1 N. Y. & Cr. 226.   Old age and feeble health are not sufficient foundation for a gift *causa mortis*   Robson v. Jones, 3 Del. Ch. 51; Weston v. Hight, 17 Maine 287; Irish v. Nutting, 27 Barb. 385; Thornton on Gifts, p. 33.   These gifts were not *causa mortis* gifts.   There was no defeasance connected with them in any way.   It is not the intention of the donor that the gifts should revert.   Dunn v. Bank, 109 Mo. 101; Tomlinson v. Ellison, 104 Mo. 105; McCord v. McCord, 77 Mo. 166; Walter v. Ford, 74 Mo. 197; Bieber's Adm'r. v. Boeckmann, 70 Mo. App. 507; Keyl v. Westerhaus, supra; Tygard v. McComb, 54 Mo. App. 90; Emery v. Clough, 63 N. H. 552; s. c., 56 Am. Rep. 544.   It is only a presumption that a gift made in last sickness is *causa mortis,* and this presumption can be rebutted.   8 Am. and Eng. Ency. Law, 1345; Hatcher v. Buford, supra; Ammon v. Martin, 59 Ark. 191; Thornton on Gifts, p. 38, citing Kate v. Leithead, Kay 658; McCarty v. Kearnan, 86 Ill. 291; Carty v. Connelly, 91 Cal. 15.   It must be borne in mind that a donor on his death bed, fully aware of the near approach of his dissolution, may make an absolute gift, a gift *inter vivos.*   Thornton, Gifts, pp. 23 and 24, sec. 21, citing Edwards v. Jones, 1 Mylne & Craig, 226; Duffield v. Elwes, 63 N. H. 554; Dicheschied v. Bank, 28 W. Va. 340; Newton v. Snyder, 44 Ark. 42.   (5)   A gift *inter vivos* is the parting with the title to personal property *in praesenti* absolutely and irrevocably.   Gifts *inter vivos* have no reference to the future, but go into immediate and absolute effect. Tygard v. McComb, supra; Keyl v. Westerhaus, supra; It is a question of intent.   Gannon v. McGuire, 160 N. Y. 476.   These gifts were *inter vivos,* and hence, could not be testamentary: First, there was a delivery; second, there was acceptance by the donees; third, there was a taking effect *in praesenti* according to the intention of the donor; fourth,

there was a consideration therefor.   The first three without the fourth make a complete gift, divesting the donor of title and dominion.   In re Estate of Soulard, 141 Mo. 656; School District v. Sheidly, 138 Mo. 683; Spencer v. Vance, 57 Mo. 429.   (6)   A husband has the power to dispose of his personal estate absolutely, during his life by sale or by gift, and if he reserves no right to himself the transfer will prevail.against the wife, even though it is made for the purpose of defeating her dower.   McLaughlin v. McLaughlin, supra; Tucker v. Tucker, supra; Crecelius v. Horst, supra; Brandon v. Dawson, supra; Stratt v. O'Neil, supra; Smith v. Smith, 24 Col. 597; Kerr on Fraud and Mistake, 320; Lines v. Lines, supra; Dickerson's Appeal, 115 Pa. St. 198; Pringle v. Pringle, 59 Pa. St. 281; Dunnock v. Dunnock, 3 Md. Ch. 140; Hays v. Henry, 1 Md. Ch. 337; Cranston v. Cranston, 3 Mich. 230; Holmes v. Holmes, 3 Paige 363; Richards v. Richards, 11 Hump. 420; Petty v. Petty, 4 B. Mon. 215; Ellmaker v. Ellmaker, 4 Watts. 91; Cameron v. Cameron, supra; Lightfoot v. Colgin, 5 Munf. 42; Stewart v. Stewart, 5 Conn. 317; Poe v. Browning, 55 Tex. 133; Padfield v. Padfield, 78 Ill. 16; Samson v. Samson, 67 Iowa 253.

*P. F. Greenwood, Ellison & Campbell* and *W. D. Goode* for respondent.

(1)   The presumption is that in consuming a couple of hours in taking respondent's deposition, she was fully examined upon the entire merits of the case.   By arbitrarily refusing to produce the deposition, and by having examined her upon the merits of the case, appellants waived her incompetency upon the whole case and in all its branches.   Henry v. Sneed, 99 Mo. 407; Tomlinson v. Ellison, 104 Mo. 105; Darrier v. Darrier, 58 Mo. 222; Patten v. Casey, 57 Mo. 118; Moeckel v. Heim, 134 Mo. 576; Harlan v. Moore, 132 Mo. 483; Ess v. Griffith, 139 Mo. 329; Borgess Co. v. Vette, 142 Mo. 560; Legg v. Drake, 1 Ohio St. 286; Spradling v. Conway, 51 Mo. 51.   (2)   Mrs. Rice was not incompetent

because her husband was dead. He can not be regarded as an adverse party. Brandon v. Dawson, 51 Mo. App. 244; Hoyt v. Davis, 30 Mo. App. 309; Spradling v. Conway, supra. (3) It was against public policy for Columbus T. Rice to attempt to defraud his wife and pauperize her. If his children in league with him engaged secretly in an attempt to defraud her, his wife, their stepmother, did they not all waive the rule of public policy, having violated it themselves? Darrier v. Darrier, 58 Mo. 225; Henry v. Sneed, 99 Mo. 407. (4) While it is true a widow takes a share in the personalty of her husband belonging to him at his death, still if the evidence shows he secretly disposed of it while in feeble health, for the purpose of defrauding her, equity will say he did die possessed of it as against volunteers. Davis v. Davis, 5 Mo. 183. The doctrine of gift *causa mortis* may have a place in the case. A gift in expectation of death means at the approach, or when in feeble and declining health, in poor health. Stone v. Stone, 18 Mo. 390; Johnson v. Johnson, 23 Mo. 561; Tucker v. Tucker, 29 Mo. 350; Straat v. O'Neil, 84 Mo. 68; Crecelius v. Horst, 89 Mo. 356. (5) Gifts *inter vivos* are good as between the parties whether the doner lives or dies, if not in fraud of creditors or wife. Bona fides of transaction does not relieve the transaction of fraud. Murray v. Murray, 8 L. R. A. 95. And the fact that it was done to carry out a previous purpose to give to children by a previous marriage concealed from her, will not deprive it of its fraudulent character. The wife is more favored than a creditor and marriage is the highest consideration known to the law. 2 Story, Eq. (12 Ed.), sec. 955; Walker v. Walker, 27 L. R. A. 801; Bump on Fr. Convey., p. 491. A creditor could have set aside these gifts. Why not the wife, if given secretly, while in poor health and for the purpose of pauperizing her? (6) There is neither legal nor equitable jointure in this case. It is not legal because the conveyance to her on the eve of marriage does not so express it as required by the statute. R. S. 1889,

Rice v. Waddill.

sec. 4529; Worseley v. Worseley, 16 B. Mon. 470. It is not equitable jointure because there is no contract proven, and such contract can not be proven by parol evidence. Straat v. O'Neil, supra. It can not be equitable jointure because the settlement must be fair and proportionate to the estate, and must be so pleaded, which is not done in this case. 16 Ohio St. 532; 27 Ohio St. 64; Reeves on Domes. Rel. p. 112; 19 Mo. 469; 10 Ohio St. 501; 2 Paige, 511; Halferty v. Searce, 135 Mo. 428; Mowser v. Mowser, 87 Mo. 437; 79 Mich. 357; 37 Mich. 563; 51 Mich. 306; Logan v. Phillip, 18 Mo. 23. (7) A husband can not deprive widow of dower in personal estate by will, or by deed, or other instrument. "But if the transactions be merely colorable, or be accompanied with circumstances evincing fraud, the disposition will be void against her." Tucker v. Tucker, 29 Mo. 350. If testamentary in its character and shown to be for the purpose of defrauding her of her dower, then it will be set aside. Crecelius v. Horst, supra; Dyer v. Smith, 62 Mo. App. 606. (8) It was testamentary in its character. His extreme age, his multiplied afflictions, his haste and secrecy in sacrificing and disposing of all, or most all, he had; his great desire to see his children get it and enjoy it before he died, conclusively evince it was not only testamentary in its character, but actually fraudulent as to his wife. (9) Gifts *inter vivos* in fraud of wife's rights are void. Humel's Estate 161 Pa. 215; Murry v. Murry, 8 L. R. A. 95; Basic v. Basic, 44 Iowa 259; 24 Am. Rep. 740; Jenny v. Jenny, 24 Vt. 324; Nichols v. Nichols, 61 Vt. 426; Sandborn v. Lang, 41 Md. 41; Cranson v. Cranson, 4 Mich. 230; Green v. Adams, 59 Vt. 611; 66 Am. Dec. 534; Jiggitts v. Jiggitts, 40 Miss. 718; Jones v. Jones, 64 Wis. 301; Reynolds v. Vance, 1 Heisk. 344; Dyer v. Smith, 62 Mo. App. 606.

GANTT, J.—This is a suit in equity by plaintiff, who is the widow of Columbus T. Rice, deceased, against the de-

fendants, who are a son-in-law and the children and grand-children of said Columbus T. Rice, for an accounting of the moneys given by said Columbus T. Rice to these defendants for the alleged fraudulent purpose of defeating her dower right therein, and to set aside the conveyance of certain real estate to certain of said defendants charged to have been made by said Rice secretly and with a view to defraud her of her dower therein, on the eve of his marriage to plaintiff, and to declare a trust therein for plaintiff, and for general relief.

The answers deny the allegations of the petition and set up a marriage contract by which said Rice was to convey certain real estate to plaintiff and give her certain moneys in lieu of her marital rights in his property.

The facts developed are substantially the following:

Columbus T. Rice and the plaintiff Carrie V. Rice were married about six o'clock on the evening of February 24, 1897, at Kirksville, Adair county, in this State. Plaintiff was at that time about thirty-six years of age. Columbus T. Rice was a widower past seventy years of age, his first wife having died in March, 1896. The defendants Charles Rice, Edward A. Rice, Mary S. Rice and Augusta Waddill, are the children of Columbus T. Rice by his first marriage. Defendant James E. Waddill is the husband of Augusta Waddill. Defendants Annie M. Rice, Catherine Rice, and Francis Rice are the children of Edward A. Rice.

The plaintiff and Columbus T. Rice became engaged to marry in October, 1896. At the time of the engagement Columbus T. Rice was reputed to own and did own real and personal property in Adair county of the value of from $12,-000 to $15,000, and a fifth interest in the estate of a deceased brother in Chicago, Illinois, of the value of $75,000. At the time of his death his estate inventoried property of the value of $2,319.32, of which $325 was a note on his son Edward A. Rice who was insolvent.

After their marriage plaintiff and Columbus T. Rice

lived happily together until some time in May, 1897.

About this time Frank Grant, a nephew of Columbus T. Rice, visited the latter, and during this visit Columbus T. Rice and said Frank Grant entered into a contract by which said Columbus T. Rice sold to said Grant his undivided one-fifth interest in the estate of his deceased brother James H. Rice, for $40,000, one hundred dollars of which was to be paid in cash and the balance $39,900 in forty days from May 13, 1897, and if not then paid the $100 was to be forfeited by said Grant as liquidated damages. This option was after-wards by mutual consent extended for forty days from June 22, 1897. This contract was finally executed and consummated on July 7, 1897, at Chicago, Illinois. To this original option contract Charles Rice, Mary L. Rice and Augusta Waddill, children of Columbus Rice, were witnesses and signed the same as such, but plaintiff knew nothing of said contract or its execution, and George Rice, a brother, who owned an equal share in the estate of the deceased brother James H. Rice, was kept in ignorance of said trade.

On July 7, 1897, Columbus T. Rice received the $40,000 from Grant, $15,000 of which was paid out of money received from the executors of James H. Rice out of the share of Columbus T. Rice. On the same day Columbus T. Rice disposed of said $40,000 as follows: He gave his son Charles Rice, $8,000; his daughter Mary Rice, $8,000; Augusta Waddill, a daughter, $8,000; and the balance he deposited in a Chicago bank on a time deposit for one year, but on August 16, 1897, he gave his son-in-law, James Waddill, $7,531.08, and Charles Rice, his son, $8,000, out of said time deposit. All these gifts were by drafts purchased in Chicago and sent by mail to the said donees in their own names. Columbus T. Rice, however, enjoined upon three of his children to whom he sent said drafts, to-wit, Charles, Mary and Augusta, that they should each expend $1,800 of the amount sent him or her, for the benefit of his son and their brother, Edward Rice. This trust

they executed by purchasing for $3,960 a farm selected by Columbus T. Rice, and caused the same to be conveyed to said Edward Rice's children, but reserving the use, benefits and profits thereof to Edward Rice during his natural life.

On August 11, 1897, Columbus T. Rice also gave James E. Waddill, his son-in-law, $1,722, and to his grandson, Ovid Waddill, $300 in bank stock.

By warranty deed dated February 9, 1897, Columbus T. Rice conveyed 160 acres of land in Adair county to his grandchildren, the children of Augusta Waddill and Charles Rice, for the nominal consideration of $500 and love and affection; and on February 24, 1897, he deeded to his children Mary and Charles Rice and Augusta Waddill two lots in the city of Kirksville. These deeds were delivered to his son-in-law, James E. Waddill, a few hours before his marriage to plaintiff on February 24, 1897, but were not recorded until July 2, 1897.

His bank account in Kirksville showed a good balance until July, 1897, when it dwindled to $12.29, the balance which passed to his administrator when he died in October, 1897.

In 1897, Columbus T. Rice was past seventy years of age. That he was weak, feeble, and slightly paralyzed; had varicose veins, and was constantly under the care of physicians, does not admit of doubt, under the evidence in this record.

Mrs. Kinsel testified: "In March (1897) he said he didn't think he was going to live long; he was complaining of his head, said it was killing him; said he could see dark things before him all the time, and that it was a bad sign."

Mr. Ringo, his banker and friend, testified: "I regarded him as a feeble old man ever since he had that stroke of paralysis. I don't think he ever did or would recover from that stroke."

His son-in-law and children testified he had a stroke of

paralysis and had been ruptured, had varicose veins, and had to be assisted across the street. He was quite feeble.

In July, 1897, he spoke of the death of his brother and said two or three of the family had died within the last year and he did not expect any of them would be alive in a year from then.

About the first days of July, Columbus T. Rice went to Quincy, Illinois, ostensibly for medical treatment.

On July 6th he wrote to his wife, the plaintiff, from Quincy, as follows: "My Dear Wife: We arrived here safe. I have been to see the doctor. He wishes me *to stay here a few days to see how the medicine affects me.* I will be home as soon as possible. C. T. Rice." To this letter was appended this postcript: "I leave for Chicago at 7 p. m., etc. Frank W. Grant."

Both the letter and postcript were in Grant's handwriting except Mr. Rice's signature to the letter. Again on July 8, 1897, Mr. Rice wrote plaintiff: "My Dear Wife: I am still in Quincy. I am doctoring my eyes and also my paralysis. C. T. Rice."

Between the time of mailing these two letters and while his wife supposed he was still in Quincy, he had gone to Chicago and disposed of his share in his brother's estate, worth $75,000 for $40,000, and given away the bulk of it to his children without an intimation to his wife of what he had done or that he had been to Chicago.

On the day of her marriage to Columbus T. Rice, to-wit, February 24, 1897, he gave her a deed to lots 7 and 8 in block 16 in the city of Kirksville of the value of $1,500, to take effect at his death, or rather reserving to himself a life estate therein.

Other facts may be noted, if necessary, in the opinion.

The circuit court found that Columbus T. Rice was an old, diseased and infirm man, and with the fraudulent purpose of depriving the plaintiff, his wife of her marital inter-

ests in all his estate, and in the belief that he would not live long, secretly divested himself of all his estate, real, personal and mixed, except about $2,500 worth in Missouri, and a small interest in some real estate in Chicago, of about the value of $2,000; that at the time of his marriage to plaintiff he was possessed and owned real estate and personal property of the value of $85,000, and with the fraudulent purpose aforesaid, and secretly, without the knowledge or consent of plaintiff, he voluntarily gave to James E. Waddill, his son-in-law, $9,253.18 in cash in July and August, 1897; and to Augusta Waddill, his daughter, $8,000, in the month of July, 1897; and to Charles Rice, his son, $16,000 in July, 1897; and to his daughter, Mary L. Rice, $8,000, in the month of July, 1897. The court further found that the defendants Augusta Waddill, Charles Rice, and Mary Rice received their said several sums impressed with a trust in favor of Columbus T. Rice for the use of Edward Rice and his children and executed said trust by purchasing certain lands selected by Columbus T. Rice and having the same deeded to the children of Edward T. Rice, with a life estate to said Edward; that the reasonable value of said lands are $3,960 and the balance, $1,440, was paid to said Edward. The court then proceeded to find the amount due plaintiff as dowress from each of said children, and charged the amount due from Edward Rice and children as a lien on the lands so conveyed to them.

In due time a motion for new trial was filed and overruled, and an appeal taken to this court.

I. Upon the foregoing statement of facts we are asked to affirm the judgment of the circuit court, which decreed that Columbus T. Rice fraudulently disposed by gifts of his large estate with the purpose and design of defeating his widow's dower therein. The jurisdiction of a court of equity to grant relief in such cases has been maintained by this court from a very early period in the history of this State, beginning with Davis v. Davis, 5 Mo. 183, reaffirmed in Stone v. Stone, 18

Mo. 392, and very recently in Newton v. Newton, 162 Mo. 173, besides many intermediate cases.

These cases were all bottomed upon the proposition that a conveyance of land or personalty by a husband, in contemplation of death, without consideration, and for the purpose of defrauding the wife of her marital rights, is fraudulent and void as to her, and gives ground for equitable relief.

Defendants, however, strenuously insist that three essential conditions are absent in this case. They insist the deeds and gifts of personalty were not made in the last sickness of Columbus T. Rice, and that there was no evidence of fraud, and furthermore, that by reason of an antenuptial contract between said Columbus T. Rice and plaintiff she was barred of claiming dower in his estate.

Before proceeding to a discussion as to the sufficiency of the evidence to sustain the charge of fraud, it is proper to state that there was no express provision in the deed of Columbus T. Rice to his wife, that said conveyance was a provision for her by way of jointure and in lieu of dower, so as to bring the same within the provisions of section 4529, Revised Statutes 1889 (sec. 2950, R. S. 1899). This statute requires that if a provision is made by the husband with a design to exclude her dower or put her to an election, it must be *expressed* on the face of the instrument to be in lieu of or in full discharge of her dower. [Perry v. Perryman, 19 Mo. 469; Dudley v. Davenport, 85 Mo. 462.]

That these gifts and deeds to his children by Columbus T. Rice were voluntary and wholly without consideration is established by the evidence of the defendants themselves, and that they were made secretly and with a deliberate purpose to keep the plaintiff ignorant of their execution, does not admit of a reasonable doubt. Counsel for defendants insist, however, that the gifts were complete and absolute gifts *inter vivos,* such as Columbus T. Rice had a perfect right to make,

Vol 168 mo—8.

with or without the knowledge or consent of his wife or intended wife, and as the statute only endows her of personalty which her husband owned at the time of his death she has no cause of complaint, and they further contend that to avoid such gifts they must be made *in the last sickness* of Columbus T. Rice and with a design to defraud plaintiff. Much stress is laid upon the words "*in his last sickness*" which counsel construe to mean very near to death or in *view* of impending dissolution, and that the evidence falls short of this.

An examination of the evidence shows that Columbus T. Rice was a man over seventy years of age, and had suffered a stroke of paralysis; was ruptured, had varicose veins; was so feeble that he required support to get across the streets to avoid teams; that he complained of pains in his head which he said were killing him; that he constantly had dark things before his eyes which he said was a bad sign; that several of his family had died that year and he did not expect to be living at the end of the year. He married February 24, 1897, and disposed of the bulk of his very large estate by gifts to his children in July and August, and died about October 1, 1897.

How can it be said in view of these facts, that this old man who was constantly under the care of physicians all this time; who had never until that year shown any generosity toward his children, but had concluded, as he stated, that he wanted to see his children enjoy his property in his lifetime, and by gifts to them denuded himself of an estate worth $90,000, reserving to himself only a pittance of about $2,500, was not doing these things in contemplation of an early demise and really in his last sickness?

And that it was done with a view to defeat his wife's dower we can not doubt. After his engagement to marry plaintiff, on the very evening of their marriage, he secretly delivered the deeds to all his Missouri estate except the small property he gave his wife, to his son-in-law for the children

and grandchildren by his first marriage, which deeds were kept from record for several months thereafter. So careful was he that the wife he was then to marry should have no dower in the Missouri lands, that he even quitclaimed a life estate to his daughter, which he had reserved in lands he had theretofore deeded to her. The rents of the real estate which he conveyed on the day of his marriage to plaintiff, he continued to receive up to the time of his death.

No other rational deduction can be drawn from the conduct of Columbus T. Rice in his disposition of $40,000 he received from his brother's estate in 1897, than that it was a deliberate purpose to defeat his wife's dower therein, and the evidence abundantly supports the inference that it was done with the full knowledge of his adult children that such was his purpose. The contract with his nephew Grant was entered into at the residence of one of his children and signed by three of them as witnesses.

The deception he practiced upon his wife in regard to his visit to Chicago with Grant when he disposed of at least $70,000 for $40,000 strongly corroborates this conclusion, and fearful lest some marital right might attach to this money if he brought it into the State of Missouri in his own name, he carefully mailed drafts from Chicago in favor of the several children and impressed a trust to the amount of $5,400 so that the title to his son Edward and his children should not pass through his name. Columbus T. Rice, however, selected the farm, bargained for it and directed the deed made to Edward's children.

While Edward was insolvent and it was perhaps only natural that he should desire to save his bounty to him from Edward's creditors, the query propounds itself, what reason could there have been for Columbus T. Rice, who was wholly free of debt, the owner of at least $40,000, resorting to occult methods like these? By his own deed he could have settled these lands upon his grandchildren or created a spendthrift

trust for his son Edward which Edward's creditors could not have touched, or he could have advanced the money to do so without suspicion, but when he disposes of all his available property save a mere pittance with such a studied effort to prevent any portion of it remaining in his name at the time of his death and yet evidently retains such an interest as to allow him to collect the rentals of the realty up to his death and to direct the investment of the moneys in a trust for his son and his children and secretly delivers deeds to the realty on the very eve of his marriage, we can draw but one conclusion and that is that he felt that his life must soon terminate and in view of this fact, he determined his widow should not have her dower in his estate, a consummation which the laws of this State will not permit.

To avoid the logical effect of all these contrivances counsel for the defendants urge that there was no fraud designed because they say that before the death of his first wife, when he learned of the death of his brother and that he would receive a large share of his estate, he promised his first wife to give this property to his children and at that time had never met or seen plaintiff.

But that promise was utterly without consideration and incapable of enforcement either in a court of law or a court of equity. Subsequently and before he receives the estate from his brother his wife dies and he marries plaintiff. A new obligation is assumed. Whatever his duty to his first wife, and his children, the law casts upon him the duty of supporting his second wife, and the law attaches her right of dower to his estate. Granting, however, that he expressed an intention to give his children the share he should receive from the brother's estate in Chicago, there was no promise to denude himself of his Missouri lands and moneys, amounting to near $15,000, neither was there a promise to give James Waddill nearly ten thousand dollars in addition to the eight thousand

dollars he had given his daughter, Mrs. Waddill, nor had he bound himself to give his grandson all his bank stock.

The explanation found in this family talk during the life of his first wife falls far short of exculpating Columbus T. Rice from his subsequent conduct in endeavoring to defraud plaintiff of her lawful dower. It is true as said by Judge McGirk, in Davis v. Davis, 5 Mo. loc. cit. 189: "I admit that, so far as the mere form of right is concerned, they were not his. Here the form hides the substance, and was intended to do it. But in a court of chancery, no matter how cunningly and deeply covered and concealed the right may be, the deep searching justice of the chancellor, with his argus eyes, will uncover it. The chancery commands the right to remain where it should have been till all the purposes of justice are accomplished." So in this case, while formal deeds and instruments abound conferring the property of this decrepit old man upon his children and son-in-law so that apparently there is nothing of which his widow can be endowed, a court of conscience will treat these formalities as mere covers of a cunning scheme to defeat her dower and will require the voluntary donees to bring it into court until her dower is apportioned to her, and they can not complain, because they were cognizant of his sick and enfeebled condition and of his old age, and they were keepers of his secret machinations, while his wife was utterly ignorant of them and they were bound to know that by receiving his estate in this manner they were depriving her of her lawful dower.

If the disposition of his property by Columbus T. Rice under the facts disclosed in this case can be upheld, then in the oft-repeated language of this court, "the efficacy of the statute conferring dower to personalty would depend on the whim and caprice of the husband," and it might as well be repealed. [Davis v. Davis, supra; McLaughlin v. McLaughlin, 16 Mo. 242; Tucker v. Tucker, 32 Mo. 464; Ibid v. Ibid, 29 Mo.

350; Straat v. O'Neil, 84 Mo. 69; Crecelius v. Horst, 89 Mo. 356.]

Had Columbus T. Rice made his will previous to his marriage to plaintiff, and disposed of his estate to his children just as he did and then married plaintiff, no doubt could exist as to her right to her dower both in his realty and personalty, and it is now equally clear and settled that the sense and intent of the statute on this subject applies not only to wills technically but to deeds made with intent to defeat the widow's dower. The form of the instrument or the device resorted to is wholly immaterial when the intent to defeat the widow's marital rights is made apparent to the chancellor.

Counsel for defendants argue, with great earnestness, that these deeds and gifts were not testamentary in their nature, but when we consider the age of Columbus T. Rice, that he had been stricken already with paralysis, and his numerous other afflictions, and his own declaration that he did not expect to live a year; that he was constantly in the care of physicians and that within less than six months before his death he had given his children and son-in-law practically the whole of his estate, whereas previous to that time he was known to be parsimonious and close-fisted and had been exceedingly meagre in his gifts to his children, we can not avoid the conclusion that this sudden and unusual exhibition of generosity was the result of his expressed conviction that his days were numbered, and being thus warned of the approach of death he determined to distribute the estate which he could not hope to enjoy much longer. This was essentially a disposition by will of his property within the meaning of the statute reserving the widow her dower and meets all the demands of the rule that to avoid a conveyance it must be made in expectation or contemplation of death, but not necessarily in the very article of death as counsel seem to claim. [Tucker v. Tucker, 29 Mo. 352; Dyer v. Smith, 62 Mo. App. 606.]

II. Having discussed the fundamental propositions un-

derlying the case it remains to notice certain specific objections to testimony, the principal of which is that error was committed in permitting the plaintiff to testify in the cause because she was incompetent, and ancillary to the objection was the further one that the circuit court erred in permitting plaintiff to prove that prior to the time at which she was offered as a witness, defendants had taken her deposition in this cause for the reason that although they had taken her deposition they had not filed it in court, as required by law, and hence had not waived her incompetency.

The facts were briefly these.

After plaintiff commenced this suit and before defendants filed their answer one of their attorneys served notice on her attorneys that he would take her deposition before a notary public in Kirksville. It was shown beyond contradiction that plaintiff was brought before the notary, duly sworn, and examined at length by counsel for defendants, her testimony reduced to writing, and signed by her, and certified by the notary; that James E. Waddill, one of defendants, paid the notary his fees, and the notary gave him the deposition, instead of mailing it to or filing it with the circuit clerk. Jas. E. Waddill testified that he had kept the deposition; that he knew all the time where it was, and while testifying, said it was in his pocket.

This court, in Tomlinson v. Ellison, 104 Mo. loc. cit. 114, held that when a party *had taken* his adversary's deposition in the same action it amounted to a waiver of any incompetency of his adversary, notwithstanding he would have otherwise clearly been incompetent, but in order to render the party competent it devolved upon him to show the waiver to the court. Afterwards when this ruling was directly challenged in Ess v. Griffith, 139 Mo. loc. cit. 329, after a careful reconsideration that ruling was re-affirmed with the additional statement that it would constitute a waiver "though the deposition taken was not used at the trial." And these rulings

were afterwards followed with approval In re Soulard, 141 Mo. 642, and Borgess Inv. Co. v. Vette, 142 Mo. 571, in which latter case it was held the incompetency was waived for all purposes.

Can it differ in principle that, in this case, defendants took plaintiff's deposition, had it duly certified and thereby, in the language of counsel, "heard what she said and that was all he wanted to know," and then suppressed the deposition, whereas in the cases cited, the deposition was similarly taken and filed, but not used by the party taking it? Can a party thus trifle with the machinery of the law and avail himself of it if it suits his purposes, and reject it if it does not, and yet escape all the consequences of his acts? We hold he can not. When defendants, forewarned as they were by plaintiffs' counsel, that he would not permit his client to testify unless her deposition was to be taken in good faith, and they then proceeded to take her deposition, and after it was duly certified, took possession of it and retained it in their possession in court, when the court was endeavoring to ascertain the facts about it, they waived all objection to her competency and the court committed no error in so holding.

The fourth assignment of error refers us to page 16 of the abstract to support the charge that the circuit court erred in permitting plaintiff to testify to communications between herself and her husband, but reference to the record shows that plaintiff had merely testified that she only knew her husband went to Quincy by his statement, and at all events the objection was not preserved so that we can review it.

There was no error in overruling the objection to the letters of Columbus T. Rice, as it assigned no ground other than that they were incompetent, immaterial and irrelevant, which we have often held amounts to no more than "I object."

These letters were introduced to show where Columbus T. Rice was between July 6, 1897, and July 8, 1897, the day before and the day after he had conveyed away

the bulk of his estate to his nephew Grant, and his physical condition as indicated by his writing. Defendants then made a specific objection that they were communications between husband and wife, and she was incompetent to testify to their receipt, and the letters were not admissible. The circuit court upon the authority of Henry v. Sneed, 99 Mo. 407, and Darrier v. Darrier, 58 Mo. 222, held them competent upon the ground that they tended strongly to corroborate plaintiff's claim that her husband was at that time secretly and clandestinely scheming to defraud her of her marital rights and upon grounds of public policy to unearth his fraud. We think the court correctly ruled the letters were competent for that purpose, and as the fraud of Columbus T. Rice was the matter under investigation his declarations were admissible against his voluntary grantees who had taken his estate with full notice and without consideration.

And on the other hand, the self-serving statements of said Rice to Mrs. Waddill were clearly incompetent.

The findings of the court were sufficient to sustain the decree and the petition stated a case for equitable relief.

The circuit court correctly held that plaintiff could follow the estate into the hands of the grantees and decreed that they should account to her for her dower in the property they received, and its decree is in all things affirmed.

All concur.