STONE, Plaintiff in Error, *vs.* STONE *et al.*, Defendants in Error.

1. A conveyance of personal property made by a husband during his last sickness, and in expectation of death, with a view to defeat his wife's dower, is void as to her.

### *Error to Henry Circuit Court.*

This was a suit begun by Margaret Stone, the plaintiff in error, in 1850, against Jesse F. Stone, Rebecca J. Stone, Margaret D. Stone and William S. Stone, defendants in error, to recover her dower in certain slaves which had belonged to her deceased husband, John C. Stone, in his life-time. In her petition, she alleged that her husband died on the 10th day of February, 1849, and that by his will, made and published on the 27th day of January, and admitted to probate on the 6th

day of March, of that year, he had made certain provisions for her which she had renounced ; that on or about the 22d day of January, 1849, said John C. Stone, being possessed of the slaves in which she claimed dower, had executed a conveyance of them to the defendant, Jesse F. Stone, in trust for the use and benefit of the other three defendants, children of said John C. Stone by a former marriage ; that said conveyance was executed by her husband in his last sickness, a few days before his death ; that for a long time previous, he had been sick, and was then in a very weak state both of body and mind, and influenced by the persuasions of some of his blood relatives, had made said conveyance for the purpose of defrauding her of her marital rights.

The defendant, Jesse F. Stone, for himself, and the other defendants, by their guardian *ad litem*, answered, admitting the execution of the conveyance of the slaves by John C. Stone in his life-time, but denying that it was executed with a design to defraud the wife of her dower, or under any undue influence.

On the trial before the court without a jury, it appeared in evidence that John C. Stone, during his last sickness, and a short time previous to his death, in consultation with his friends, expressed a desire to secure the slaves to his children by the former marriage, through whose mother they had come to him, but feared that he could not make a conveyance which would defeat his wife's dower ; that he was advised that a deed of gift to a trustee for the benefit of his children, would be effectual for that purpose, and thereupon executed the conveyance mentioned in the petition ; and that, at the time of executing the same, he said he was convinced he had the consumption and could not live long. It also appeared that he executed a will about the same time, making provisions for his wife, with which she expressed herself satisfied.

The court, upon these facts, gave judgment for the defendants. The plaintiff brings the case here by writ of error.

*Hicks,* for appellant. The deed of trust was a fraud upon

the marital rights of Margaret Stone, having been made for the express purpose of defeating her dower, and should have been set aside. *Davis* v. *Davis*, 5 Mo. Rep. 181. 1 Johns. Ch. Rep. 482. 2 Vernon, 612. 2 Atkyn's Rep. 62 & 377. 1 ib. 63. 5 Munf. 482. 1 Russell, 485. 1 Fonbl. 269.

*Winston* and *Ballou*, for respondent. No actual fraud was proved, and it is impossible to make constructive fraud out of an act which was nothing more than the performance of a moral duty. In the case of *Davis* v. *Davis*, the bill distinctly alleged fraud, and the decision was upon a demurrer. This is a different case. There is no evidence of any fraud or undue influence; and it appears that the deed was made by John C. Stone while of sound mind. The husband may dispose of his personal property as he pleases until his death. Until then, the wife has no vested interest in it.

Scott, Judge, delivered the opinion of the court.

1. The question involved in this case, was formerly before this court, in the suit of *Davis* v. *Davis*, 5 Mo. Rep. The opinion then expressed was favorable to a right of recovery by the present plaintiff. The principle is an important one, and, however harsh its application in the present instance may be, we deem it too essential to the preservation of the right of dower of widows in their deceased husband's estates, to suffer it to be overthrown, even in a case which has no merit to commend it.

The common law gave no dower to the widow in her husband's personalty. The writ *de rationabili parte bonorum* was, grounded on a custom. So, the part to which a widow was entitled of the personal estate of a deceased freeman of London, was derived from custom. The common law only gave dower in lands, tenements and hereditaments. That right was, by ancient statutes, as well as by the common law, protected from collusive recoveries, suffered by the husband, with the intent to defeat it. It could not be aliened by him without the con-

sent of his wife. Our statute gives dower both in lands and personal estate, and the power of bequeathing is, by the statute of wills, expressly so limited as to secure the dower of the widow in the personalty.

Although dower is given in personal estate by our statute, yet it was not thereby intended to restrain the husband's absolute control of it during his life, to give and dispose of as he wills; provided it be not done in expectation of death, and with a view to defeat the widow's dower. The husband may do as he pleases with his personal property, subject to this restriction. After the enjoyment of the property, in the most absolute manner, during almost his entire life, the law will not permit him, at the approach of death, and with a view to defeat his wife's right of dower, to give it away. If such a disposition was allowed, the efficacy of the statute conferring dower in personalty, would depend on the whim or caprice of the husband.

By a custom of London, if a freeman of the city dies, leaving a widow and children, his personal estate, after his debts are paid, and the customary allowance for his funeral and the widow's chamber being first deducted, is to be divided into three equal parts, and thus disposed of : one-third part to the widow ; another third part to the children unadvanced by him in his life-time, and the other third part such freeman may bequeath. But if he has no wife, but has children, the half of his personal estate belongs to his children, and the other half he may dispose of by will or otherwise. The statute of 11 Geo. I. made great alterations in this custom, and hence we have no late cases on this question. But while it obtained, the books furnish many cases in relation to it. Fonblanque says, " the custom of London must be entirely given up, if equity would not assist to set aside conveyances in fraud of the custom ; and, therefore, where a freeman had not altogether dismissed himself of his estate in his life-time, and the deed being made when he was languishing, and but a little before his death, it ought to be looked upon as a *donatio causa mortis* ; but will

stand good as to a moiety, which he, having no wife, might dispose of. 1 vol. 218. The cases amply sustain this author, who is himself no mean authority.

The facts established clearly bring the present case within the influence of the principle above stated. The deed was made in immediate anticipation of death, and with a view to prevent the widow's right to dower attaching in the slaves conveyed. The considerations suggested in the case of *Lightfoot's Executor* v. *Colgin & wife*, 5 Munf. 42, have been weighed ; but we incline to the opinion of the dissenting judge in that case. With the concurrence of the other judges, the judgment is reversed and the cause remanded.