GEORGIE DYER, Respondent, v. ADA SMITH *et al.*, Appellants.

Kansas City Court of Appeals, May 20, 1895.

1. **Administration**: DOWER: EFFORT TO DEFEAT. The husband has absolute control of his personal property during his lifetime, to give and dispose of it as he wills; provided it be not done in expectation of death with a view to defeat dower.

2. ——: ——: ——. On the evidence in this case, certain gifts of an intestate to his children by a former marriage are *held* to be a testamentary disposition of his property and with a view to defeat his wife's dower, and that the children held the property in no other possession than that of fraudulent donees in trust for the surviving wife to the extent of her dower interest.

*Appeal from the Johnson Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

*J. W. Suddath* for appellants.

(1) At common law, the husband could dispose of his personalty as he desired, if done during his lifetime, although done for the purpose of defeating dower. *Lines v. Lines*, 24 Am. St. Rep. 487 and note; *Dickerson's Appeal*, 2 Am. St. Rep. 547; 9 Am. and Eng. Encyclopedia of Law, p. 849; Stewart's Husband and Wife, sec. 301. (2) In this state husband may dispose of his personalty, although it defeats dower, or is done for that purpose, unless it is done in view of impending death, or in a testamentary manner. *Crecelius v. Horst*, 89 Mo. 356; *Brandon v. Dawson*, 51 Mo. App. 237; *McLaughlin v. McLaughlin*, 16 Mo. 242 *loc. cit.* 250; *Tucker v. Tucker*, 32 Mo. 464; *Tucker v. Tucker*, 29 Mo. 350 *loc. cit.* 353–4; *Straat v. O'Neil*, 84 Mo. 68; *Stone v. Stone*, 18 Mo. 389.

*O. L. Houts* for respondent.

(1) "Although dower is given in personal estate by our statutes, it was not, thereby, intended to restrain the husband's control of it during his life to give and dispose of it as he wills; provided, it be not done in expectation of death with the view to defeat the widow's dower." See authorities cited by appellant, and especially *Straat v. O'Neil*, 84 Mo. 68; *Brandon v. Dawson*, 51 Mo. App. 237; *Davis v. Davis*, 5 Mo. 183; *Tucker v. Tucker*, 29 Mo. 350. This was a disposition by the donor, M. W. Dyer, of all his property in lieu of a will. It was a will in disguise and void as to plaintiff under the undisputed facts in this case and the law of this

state, regardless of the intention of the donor to deprive plaintiff of her dower so fully proven. *McCord v. McCord*, 77 Mo. 174 (at page cited); *Haydock v. Haydock*, 34 N. J. Eq. 570; 116 Mass. 566–9; *Davis v. Davis, supra.*

SMITH, P. J.—The plaintiff is the widow, and the defendants, Ada Smith and Miles Dyer, are the children of Manoah Dyer, who departed this life intestate, on the fifth day of February, 1893. The petition in effect alleges that the intestate, in expectation of death, with a view of defeating the plaintiff's right of dower in his property, disposed of it all by gift to the defendants, and that such disposition was void as to this plaintiff. Its prayer was that defendants be compelled to account for such property and the proceeds thereof, so coming into their hands, and that the court take an account and ascertain the amount to which plaintiff was entitled out of said property, as the widow of the intestate, etc. There was a trial and decree for plaintiff, from which defendants have appealed.

It has been well settled by a long and unbroken line of appellate court decisions in this state, that, "although dower is given in personal estate by our statute, yet it was not thereby intended to restrain the husband's absolute control of it during his life, to give and dispose of it as he wills; provided it be not done in expectation of death, with the view to defeat the widow's dower. And that if such disposition were allowed, the efficacy of the statute conferring dower to personalty, would depend on the whim or caprice of the husband." *Davis v. Davis*, 5 Mo. 183; *McLaughlin v. McLaughlin*, 16 Mo. 242; *Stone v. Stone*, 18 Mo. 389; *Tucker v. Tucker*, 29 Mo. 350; *Tucker v. Tucker*, 32 Mo. 464; *Straat v. O'Neil*, 84 Mo. 69; *Crecelius v. Horst*, 89 Mo. 356; *Brandon v. Dawson*, 51 Mo App. 237.

Two questions of fact are accordingly presented for our determination, viz.: *First*, whether the intestate made a disposition of his property by gift to the defendants in expectation of death, and, if so, whether, *second*, such disposition was made with an intention to defeat the dower of the plaintiff. These questions must be resolved in the light of the surrounding facts and circumstances disclosed by the evidence.

It appears that the intestate, at the time of his death, was nearly eighty years of age. Barring a previous attack of the grippe and the receipt of a sunstroke, and the usual ailments incident to advanced age, his general health had been, for many years preceding his death, uniformly good. His mind seems to have been generally clear for one of his years. He had reared a family of children by a former wife, whose death occurred many years before his. Some three years previous to his death, he had married the plaintiff, who was then a widow with several children by a former husband. There is some slight evidence that the marital relations of these parties were not at all times harmonious.

It further appears that some eighteen months before the death of the intestate, he gave to his daughter, the defendant Ada Smith, two promissory notes, amounting together to something like $2,400, and that, about thirteen months before his death, he sold to his son, the defendant Miles Dyer, a forty acre tract of land for $1,000, taking the latter's note therefor, and that shortly thereafter the former marked said note settled and sent it to the latter. It is not contended that there was any consideration for the transfer of these credits, beyond that of love and affection. They were no more than gifts. It is suggested that as the intestate had in previous years advanced to each of his

other children a sum of about $1,000, the transfers in question to defendants were intended as advancements to them for the purpose of making them equal to intestate's other children. If the gifts to the defendants were intended not only as advancements, but also to defeat the plaintiff's right of dower, then it is plain that they fall within the prohibition of the rule quoted by us at the outset.

The fact (if it was a fact) that the gifts were intended as advancements does not enter into the consideration of the question which we have to decide. Recurring further to the evidence, and we there find that it appears that Mrs. Higgins, another daughter of the intestate, testified at the trial, that about twelve or thirteen months before he died, and while ill with the grippe, he told witness that his doctor had told him "that he could not get well;" also, that Emmet Higgins, a grandson of the intestate, who lived with him (the intestate) two or three years before his death, testified that intestate told him several times during this period, that "I need not be surprised to wake up any morning and find him dead."

When these gifts were made, the intestate was "in the sere and yellow leaf." He could not reasonably expect to live but a short time thereafter. His declarations already referred to conclusively show that he was conscious of the early approach of death. He was admonished by the infirmities of age that his life must soon end. Thus impressed, he disposed of all his property to the children named. This was, in its very nature, a testamentary disposition. He would not have divested himself of his entire worldly effects, had he not felt and believed that he had about lived out his days and would have no further use for them himself. If he had felt that his life would be prolonged for many years, he would have retained his property for his own

use, instead of disposing of it so as to render himself absolutely penniless. We can not escape the conviction that the intestate gave away his property because he felt that his end was near. It would be most unreasonable to suppose that he would have stripped himself of all he had, and thereby reduced himself to a condition of destitution, if he had not expected soon to die.

Nor do we doubt that the intestate intended, by giving away all his property in his lifetime, to deprive his widow, the plaintiff, of her right of dower therein. This is made quite clear by the testimony. Mrs. Downing, another daughter of the intestate, testified that defendant Miles Dyer, about a year before the death of intestate, told her that "Pa has given Mrs. Smith (defendant) brother James' note for $2,150; also gave me one of Warren Anderson's notes for $213. I bought the forty acres of land and gave my note for $1,000. Don't know what pa is going to do with it. Georgie, our stepmother (plaintiff), is cut out. She will get nothing." This witness also testified to a conversation with defendant Miles Dyer, during the last illness of intestate, which was to the effect that when plaintiff "found out the fix she was in, she went to the defendant about the notes, and he stated to her that the intestate had sent to him the $1,000 note, which he had given for the land. He said it was sent him the next day after he bought the land, by his wife." This witness further testified that the defendant asked her not to tell anyone what he had related to her in respect to the gift of the notes to Mrs. Smith by the intestate, and that she had not told it for a year.

Emmet Higgins, the grandson already referred to, testified further that he had frequently heard his grandfather, the intestate, say that "he didn't intend for the plaintiff to have anything when he died." Mrs. Higgins, the daughter previously referred to, further testi-

fied that intestate wanted to deed her the place where he lived. He said: "I am going to dispose of all the property I have. I don't intend Georgia—plaintiff—and her children to have it. I would rather see this house in ashes than to see them have it."

The defendant Miles Dyer testified that, at the time the intestate made the deed to him for the land and received his note for the purchase price, the intestate remarked: "Now, whenever I want any money, I will call on you, but the note will never bother you much." The defendant, Mrs. Smith, testified that when intestate gave her the notes, he said, "they were for me to collect after he was gone."

It seems to us that these references to, and excerpts from, the testimony, very satisfactorily show that the paramount intention which actuated the intestate in thus disposing of his property, was to defeat the plaintiff's right of dower. And, even if an express intention were not shown, yet we think that from all the circumstances surrounding the giving away by intestate of his property, this intention may be fairly inferred. The disposition by the intestate of his property in the manner, and for the purpose we have stated, was in fraud of the rights of the plaintiff, and can not be upheld upon any principle of equity with which we are acquainted. The defendants occupy no other position than that of fraudulent grantees or donees, holding the property in trust for the plaintiff, to the extent of her dower interest therein. The defendants can not be allowed to hold the property unaffected by the dower right of the plaintiff. As to the other children and grandchildren of the intestate, the gift was doubtless valid; but as to the plaintiff, to the extent of her $400 dower interest in the subject thereof, it is invalid.

The decree of the court was amply sustained by the ievidence. The objection to it on other grounds suggested is not well taken. It will, accordingly, be affirmed. All concur.