# NEW ORLEANS & NORTHEASTERN RAILROAD CO. *v.* NATIONAL RICE MILLING CO.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 615. Argued February 27, 1914.—Decided May 25, 1914.

Where the judgment of a state court rests upon an independent ground not only adequate to sustain it but in entire harmony with an asserted Federal right, there is no denial of that right in the sense contemplated by § 237 of the Judicial Code, and the writ of error will be dismissed.

Where the initial carrier sets up the Carmack Amendment and also denies negligence, but the state court finds from conflicting evidence that the loss was occasioned by the negligence of the connecting carrier, the judgment rests on that finding as an independent ground, and this court has not jurisdiction.

A party is entitled to the benefit of all the testimony in the case from whatever source it comes; and, although having the burden of proof, need not prove any fact otherwise established.

Writ of error to review 132 Louisiana, 615, dismissed.

THE facts, which involve the jurisdiction of this court to review the judgment of a state court within § 237, Judicial Code, are stated in the opinion.

*Mr. J. Blanc Monroe,* with whom *Mr. John K. Graves* and *Mr. Monte M. Lemann* were on the brief, for plaintiff in error:

The sole issue in the case is not merely an issue of fact;. nor is the Federal question frivolous.

The judgment of the lower. court does not rest upon a question of general law, broad enough to sustain it, so that the decision of the Federal question is unnecessary.

In support of·these contentions, see *Acme Harvester Co.* v. *Beekman Lumber Co.,* 222 U. S. 300; *Adams Exp. Co.* v. *Croninger,* 226 U. S. 491; *Bachtel* v. *Wilson,* 204 U. S. 36; *Baltimore & Ohio R. Co.* v. *Maryland,* 20 Wall. 643; *Creswill* v. *Grand Lodge,* 225 U. S. 246; *Dower* v. *Richards,* 151 U. S. 658; *Elam* v. *St. Louis &c. R. R. Co.,* 93 S. W. Rep. 851; *Henderson Bridge Co.* v. *Henderson,* 173 U. S. 592; *International R. R. Co.* v. *Gergman,* 64 S. W. Rep. 999; *Kansas City So. Ry. Co.* v. *Albers Com. Co.,* 223 U. S. 573; *Kaukauna Water Power Co.* v. *Green Bay Canal Co.,* 142 U. S. 254; *Leigh* v. *Green,* 193 U. S. 79; *Mackay* v. *Dillon,* 4 How. 421; *Mallett* v. *North Carolina,* 181 U. S. 589; *Memphis R. R. Co.* v. *Reeves,* 10 Wall. 176; *Penna. R. R. Co.* v. *Hughes,* 191 U. S. 477; *Schlemmer* v. *Buffalo &c. Ry. Co.,* 205 U. S. 1; *Stanley* v. *Schwalby,* 162 U. S. 255; *Terre Haute* v. *Indianapolis &c. Ry. Co.,* 194 U. S. 579. ᛧ

*Mr. W. Catesby Jones,* with whom *Mr. Gustave Lemle* and *Mr. Arthur A. Moreno* were on the brief, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was an action to recover the value of two cars of rice destroyed by fire in August, 1908, while being transported over connecting railroads from New Orleans, Louisiana, to Charleston, South Carolina. The rice was shipped upon through bills of lading issued by the initial carrier and was destroyed while in the second carrier's custody at Old Hamburg, South Carolina. The two cars, with others

containing quicklime, were side-tracked in the yard at that place awaiting further movement towards their destination. The yard adjoined the Savannah River, which was then almost out of its banks and steadily rising as a result of extraordinary rains and cloudbursts extending up the river and its tributaries one hundred miles. The waters continued to rise, spread over the yard to a considerable depth, and ultimately reached the quicklime, thereby causing the cars to burn and destroying the rice. The cars had been in the yard about sixteen hours when the fire started. The action was against both carriers, and it was alleged in the petition, which based the right of recovery upon the Carmack Amendment to the Interstate Commerce Act (June 29, 1906, 34 Stat. 584, 595, c. 3591, § 7), that the loss of the rice was caused by the negligence of the second carrier, and that the two carriers were jointly liable. Issue was joined, and, after a trial, the district court of the parish rendered a judgment against the carriers jointly and *in solido*, which the Supreme Court of the State at first reversed and then, after a rehearing, affirmed. 132 Louisiana, 615; 61 So. Rep. 708. The carriers sued out this writ of error, basing their right so to do upon a claim that by the judgment of affirmance they were denied a right or immunity asserted under a law of the United States.

A motion to dismiss was presented along with the merits, and we think it is well taken.

The bills of lading contained these stipulations:

"This company or other carriers over whose line the property may pass, shall not be held responsible for loss or damage [unless through proved carelessness or negligence of their employés] resulting  . . .  from heat, cold, fire, flood, storms, mobs or other causes not subject to the carrier's control.

"Neither this company nor any of its connecting carriers shall be liable for any damage to, or destruction of

said property by fire, unless such damage or destruction shall result directly and exclusively from their negligence or that of their employés, and unless such negligence shall be affirmatively established by the owner of said property."

In the Supreme Court of the State the carriers contended that, under the combined operation of the Carmack Amendment as interpreted in *Adams Express Co.* v. *Croninger*, 226 U. S. 491, the stipulations in the bills of lading, and the common-law rule applied in *Railroad Co.* v. *Reeves*, 10 Wall. 176, and other cases,[1] they were entitled to exoneration upon showing that the rice was destroyed by the extraordinary flood, unless it also was shown that the second carrier contributed to the loss by negligently failing to take reasonable precautions to avoid it when the rising waters gave warning of the danger; and it was particularly urged as a part of this contention that the burden was upon the plaintiff to show such negligence, and not upon the carriers to show the absence of it. But the court, although disapproving the latter phase of the contention and thinking the carriers were charged by the law of Louisiana with the burden of showing that there was no negligence, did not rest its judgment upon that ground. On the contrary, it examined the evidence, which comprehensively covered the subject, to ascertain whether, upon the hypothesis that the contention of the carriers was sound, they were liable, and from that examination it found as matter of fact that the second carrier had negligently permitted the cars of rice to remain within the influence of the rising flood and in immediate proximity to the quicklime when ordinary prudence required that they be moved to a place of safety; and that this was

---

[1] *Clark* v. *Barnwell*, 12 How. 272, 280, 281, 283; *Transportation Co.* v. *Downer*, 11 Wall. 129, 133; *Cau* v. *Texas & Pacific Railway Co.*, 194 U. S. 427, 432.

made an independent ground of the judgment is shown by the court's extended discussion of the evidence and by the following excerpts from its opinion:

"A close reading of the evidence compels the conclusion that there was not sufficient forethought on the part of the officers in charge of the railroad yards. We have seen that the river was rising rapidly on the morning of the 26th of August. Some of the witnesses testified that by 7 o'clock it had covered the switch tracks, and yet nothing was done to protect property. Leisurely enough, the employés went about their business and gave very little concern to the rising waters. Those who did attempt to save property (if what they did can be considered in that light) displayed very little activity, beginning at 8 o'clock, taking out a few cars and leaving others in the Old Hamburg yards. That is all they did. These yards were submerged by water to a height above the floor of the cars. The question arises: Was it possible, before the waters reached their greatest height, to move the cars to a safer place than where they were hauled to on the morning of the 26th of August; that is, to the Old Hamburg yards? We have noted, before 8 o'clock or 8.30 o'clock a. m., not the least attempt was made to move the cars out of the yard where they had been placed. Mr. Benson, inspector of the Southern Railway Company, testified that on the morning of the 26th of August, he reported at the Hamburg yard at 7 o'clock to go to work, and at that time the water had just reached the rail in front of the block office. There were a crew and an engine in the yard. Why were they not put at work at that time to save the freight?

"Another witness, the night operator, renders it still more evident that it was possible to move the train in the morning, for he says that when he went to work the yard was entirely free from water on the 26th of August in the morning. An attempt was made to rescue the cars between 8 and half past 8 o'clock a. m. It failed. They

went too late to rescue these cars. There had been ample time to save them. (132 Louisiana, p. 643.)

\* \* \* \* \* \* \* \*

"These floods were frequent, and yet defendant remained indifferent, and even sent its cars to the lowest places on the yard, where they were permitted to remain without making a serious and timely attempt to take them away.

"From all this evidence we are led to the inference, which we think is positive, that there was negligence. A little timely activity would have brought about a different result, and would have saved plaintiff's property, or would have placed defendant in a position to successfully defend itself.

"Unquestionably the river was rising rapidly on the morning of the 26th at 7 o'clock; in 35 minutes it covered the switch tracks. It does not seem that anything was done to prevent the destruction of the cars. Leisurely enough, the employés went about their respective occupations, and now, when they give an account of themselves, it does seem as if they wish to lay all the trouble on the rising waters, although they remained indifferent when they should have exerted themselves (p. 645).

\* \* \* \* \* \* \* \*

"Admitting for a moment all that is claimed under the Carmack Amendment, under any of the laws of this country, indifferent railroad people, who receive freight to be transported some distance, and who, just before the waters of a storm have flowed down, stop the cars on the way, and run them to the lowest part of their yards, and place them next to cars loaded with quicklime, easily ignited by water, and leave them at that place while other cars are taken out, and who make no attempt to haul them out, although the waters are rising slowly enough for such work after warning given, are not protected from the charge of negligence under the law" (p. 649).

True, the testimony upon which the court rested its conclusion that negligence was proved did not come from the plaintiff's witnesses but from those for the carriers, and was largely elicited by cross-examination, but that is quite immaterial. The plaintiff was entitled to the benefit of all the testimony in the case, from whatever source it came, and was not required, even though having the burden of proof, to go through the ceremony of proving any fact otherwise established.

As it clearly appears that the judgment rested upon a ground which was not only adequate to sustain it but in entire harmony with the carrier's asserted Federal right, it cannot be said that there was a denial of that right in the sense contemplated by § 237 of the Judicial Code. Whether the right was well founded we therefore need not consider.

*Writ of error dismissed.*