ALICE P. MERZ (now ALICE SZOMBATHY) v. TOWER GROVE BANK & TRUST COMPANY, Appellant; ADOLPH MERZ, Executor of the Estate of JULIUS M. MERZ; ADOLPH MERZ and JEAN J. MERZ.

ALICE P. MERZ (now ALICE SZOMBATHY) v. TOWER GROVE BANK & TRUST COMPANY, Defendant; ADOLPH MERZ, Executor of the Estate of JULIUS M. MERZ; ADOLPH MERZ and JEAN J. MERZ, Appellants.—130 S. W. (2d) 611.

Division One, July 7, 1939.

1152

*Frank Coffman* and *Anderson, Gilbert, Wolfort, Allen & Bierman* for Adolph Merz and others.

*Dubail, Judge & Winter* for Tower Grove Bank & Trust Company.

*Oscar Habenicht, Foristel, Mudd, Blair & Habenicht* and *Salkey & Jones* for Alice P. Merz.

DALTON, C.—This is a suit in equity. There are cross-appeals by certain defendants. Plaintiff (respondent here) as the widow of Julius M. Merz (hereinafter called deceased) seeks to set aside a conveyance in trust made by the deceased to defendant Tower Grove Bank & Trust Company (hereinafter called Trust Company) as being made in fraud of her marital rights and as being testamentary in character and to recover one-half of the assets conveyed thereby.

The Trust Company (appellant here) was made a defendant, both as trustee under the declaration and conveyance in trust, and as one of the executors under the will of the deceased. Appellant Adolph Merz, brother and sole and only heir at law of deceased, was made defendant in his individual capacity, and as one of the executors under

the will of deceased, and also as a trustee named in the will of deceased. Each of these defendants filed separate answers in their respective capacities. Appellant Adolph Merz, in one of his answers, included what is referred to as a cross-bill, charging that the conveyance in trust was void *in toto*. We shall consider this cross-bill later. Other parties defendant included persons interested in the trust estate, among them appellant Jean J. Merz, son of Adolph Merz and nephew of deceased.

The trial court held (1) that the conveyance in trust was made while the deceased was conscious of impending death and with a view and purpose of defrauding plaintiff of her marital rights in the property conveyed in trust; (2) that the conveyance was void as to a half interest in said property and that plaintiff was entitled to recover same; (3) found the issues on the cross-bill in favor of plaintiff and certain other defendants and against defendant Adolph Merz, as one of the executors of the will of deceased, and dismissed the cross-bill; (4) declared the trust conveyance valid in all respects except as to plaintiff; and (5) found the issues against the other answering defendants.

From the above decree the Trust Company, as trustee under the conveyance in trust, appealed. Defendant Adolph Merz in his individual capacity and as executor under the will of deceased, together with defendant Jean J. Merz, have jointly appealed. The separate appeals have been separately briefed but have been consolidated here. We shall consider the appeals in the above order.

Appellant Trust Company, as trustee under the declaration and conveyance in trust, assigns error in the record as follows: (1) in not dismissing plaintiff's bill and entering judgment for appellant; (2) in holding that the conveyance was executed with a view of defrauding plaintiff of her marital rights; (3) in holding the conveyance in trust void as to one-half interest of the property conveyed; (4) in basing judgment on testimony improperly admitted in evidence; and (5) in not providing that the expenses and compensation of the trustee be paid out of the trust estate. These assignments require a consideration of the cause on its merits and we shall consider the first three assignments together.

The petition alleges that plaintiff's late husband, the deceased, conveyed personal property of a value in excess of $300,000 by an instrument in writing dated November 28, 1934, to himself and the Trust Company, as trustees, with power to hold and manage the fund, make investments and reinvestments, and pay, (1) the entire income therefrom to the donor (who until his death was one of the trustees), during his lifetime, and at his death the sum of $200 per month to his widow (respondent) during her lifetime, and (2) the sum of $200 per month to Adolph Merz during his lifetime. It was alleged that the instrument provided that should respondent predecease Adolph Merz,

the trustee should then pay the said Adolph Merz during his lifetime the sum of $400 per month, but should Adolph Merz predecease respondent, then the trustee should pay to Jean J. Merz the sum of $200 per month, and upon the death of both respondent and appellant Adolph Merz, the trustee should pay Jean J. Merz during his lifetime $400 per month, and upon his death the trustee was directed to convey, transfer, and deliver the trust estate to certain other persons. The petition further alleged that by said instrument the donor (deceased) reserved the right to revoke the trust at any time and to add other assets to the trust fund and fixed the compensation to be paid to the trustee. It alleged that on the date of the execution of said declaration and conveyance of trust, and for a long time prior thereto, deceased was sick, weak and infirm; that he was confined to his home under the care of his brother, Adolph Merz, a doctor of medicine; that he was attended by a practical nurse; that in November, 1934, and for some time prior thereto, he was unable to leave his home unattended; that the conveyance was made immediately prior to his death; that he was survived only by his widow and one brother; and that the widow was entitled to one-half of the property attempted to be conveyed in trust. The petition effectively charged that the trust conveyance was executed in anticipation of immediate death, was testamentary in character, and was executed for the express purpose of defeating and defrauding respondent of her marital rights in and to the property conveyed in trust. The prayer of the petition was that the declaration of trust be for naught held as to one-half of the fund to which plaintiff was entitled and for other and further relief.

Appellant Trust Company's answers to the petition, both as trustee and as executor, except for certain admissions as to the death of deceased and the execution of the trust, were general denials. In the hearing before the trial court respondent first offered her testimony, then testimony was offered by defendant Adolph Merz and certain other defendants, and thereafter testimony was offered on behalf of defendant Trust Company.

The evidence tended to show that deceased died December 12, 1934; that he was past 64 years of age; that immediately prior to his death he resided in St. Louis, with respondent, his lawful wife; that Adolph Merz was his sole and only heir at law; that he died testate and that his will dated November 26, 1934, had been admitted to probate; that defendant Adolph Merz and Trust Company qualified as executors and were acting as such; that the will provided certain legacies totaling approximately $8500 and then bequeathed all of the remainder of his estate, both real and personal, to his widow and his brother in equal shares; that the total inventoried personal estate, exclusive of the trust estate, amounted to approximately $16,000; that certain real estate not appraised was worth about $28,500; that the widow

had been allowed for provisions and other allowances a total of $7600; and that the widow had duly renounced the provisions of the will and filed her election to take one-half of the real and personal estate, absolutely, subject to the payment of debts.

The evidence further tended to show that on November 28, 1934, deceased had executed the conveyance and declaration in trust (all as alleged in the petition set out above), and that deceased had transferred assets to the trustee, as listed in a schedule annexed to the petition, of the face value of $330,000, subject to the payment of a loan of $20,000, for which certain of the securities were hypothecated; that for the purpose of defeating respondent's marital rights deceased had on April 14, 1934, executed a prior will. This will, revoked by the later will, bequeathed the residue of deceased's estate to Adolph Merz, to hold in trust the income therefrom, to be divided equally between plaintiff and Adolph Merz, and providing that if plaintiff renounced the will, that the trust should be void.

There was evidence that deceased had been suffering from chronic myocarditis and chronic nephritis for about a year prior to his death; that the first disease effects the heart and the second the kidneys; that said diseases are progressive, are not curable; that they always cause death; that the heart disease resulted in high blood pressure and the kidney disease caused poisons to be discharged into the blood; that these diseases affected deceased physically and mentally; that deceased suffered from palsy and would shake; that deceased was a very sick man, knew that death was imminent and that he might die any time; that he was confined to bed from time to time; that he had heart spells; that he would improve and then relapse; that he was never strong, but in the last six months before his death failed rapidly and got weaker and weaker; that he was attended by a nurse, could not go out unattended, and his brother, a physician regularly attended him; that deceased knew he could not get well; that he knew he was going to die and the time was not remote; that he told witnesses he was getting his affairs in order; that in a few days after executing the conveyance in trust and his last will, he settled up his business with the Doerflinger Realty Company and took a note for $20,000 covering a balance due him; and that he endorsed this note in blank and had it delivered as a gift to his brother Adolph Merz.

The evidence further tended to show that during the last year of his life deceased was continually seeking some method of limiting his wife to an income of $200 per month, in the event of his death; that though repeatedly advised that his wife would be able to take half of his property, the deceased was not satisfied; that he wanted his wife's part of his property tied up but the remainder given to his brother outright; that he was looking for someone who could tell him how to do it; that he discussed the matter dozens of times; that de-

1158

ceased seemed to think that because his wife drew $200 per month as deputy circuit clerk before her marriage, that she should not be entitled to any greater income from his estate; that deceased knew that he could not deprive his wife of half of his property by will, but thought that by creating a trust fund he could deprive her of her control of half of his property.

There was evidence that deceased had been informed by someone that a trust could be created that would bind his wife so that she could not get more than $200 per month from his estate; that deceased had been referred to the Trust Company and to Mr. Hornsby, who was one of his friends; that he was advised that Hornsby could do what anybody else could do about a trust; that deceased later visited his friend Doerflinger and advised Doerflinger that Hornsby said he could handle it for him alright.

The evidence further tended to show that the deceased visited the Trust Company on November 22, November 26 and November 28, 1934; that he was a stockholder and depositor there; that his brother accompanied him at least twice, but did not interfere in any way; that deceased first conferred with the president and then the trust officer; that Mr. Hornsby was trust officer and vice-president of the Trust Company; that after advising the trust officer as to what he wanted, certain safety deposit boxes were brought in; that a memorandum was made of their contents; and that a preliminary outline was made of a proposed trust conveyance. There was evidence that on the next occasion the securities were checked against a typewritten list and a form of the trust agreement and receipt signed; that Hornsby advised deceased in the presence of Adolph Merz that the agreement was bullet proof and could not be broken; that later the will was prepared and witnessed; that thereafter certain changes were made in the trust agreement and a new form of trust agreement executed; that neither the first memorandums nor the original draft of the trust agreement were retained by the trust officer; that on one occasion while deceased was at the Trust Company he became so weak that whiskey had to be given to him to brace him up; that while deceased was ill at home, prior to the execution of the trust, he was most anxious to get up and get out and be able to fix up his affairs; but that after the trust agreement was executed and the will prepared and signed deceased's mind was eased; that he advised witnesses that he was ready for the end and the sooner the better; that he seemed to be entirely satisfied with the disposition he had made of the property. There was evidence that deceased advised Doerflinger that he had it all fixed up; that he had been to the Trust Company that afternoon; that he was sorry to tie the Doc's end of the property up; that he hated "to sew up" the whole thing; that the agreement was "iron-clad;" that Hornsby told him it could not be broken; and that his wife was limited to $200 per month.

There was evidence that deceased advised his brother that he had his (Adolph Merz's) share of the estate tied up; that he had to do it; that the trust couldn't be broken; that he had to put all the property in the trust to make it stick and limit the wife to $200 per month; that to make it stick he had to treat him (Adolph Merz) the same as he did her (respondent).

Appellant Trust Company called Joseph L. Hornsby, its attorney, trust officer and vice-president as a witness in its behalf. His testimony tended to show that deceased made several visits to the Trust Company in a few days; that deceased seemed to know what he wanted and asked no questions; that witness made a pencil memorandum of what deceased wanted in the trust agreement and made a pencil memorandum of the contents of the safety deposit boxes, to-wit, certain securities; that on the second visit the receipt for the trust property was signed and the will prepared and witnessed; that deceased wanted certain changes in the trust agreement which were prepared and deceased came back and signed the changed draft. He denied that he advised anyone the instrument was fool proof and insisted that deceased did the talking. He testified that Mr. Miltenberger, the president of the Trust Company, had told him that deceased was a very rich man and that "there was a will and trust that the Trust department ought to get." Witness testified that he was left with the impression that deceased was probably worth a half million dollars but that he actually knew nothing about the value of deceased's estate; that he asked deceased nothing about creditors; that he knew deceased and his brother were not legally trained; that he inferred that deceased knew the legal effect of the trust but that he did not advise him; that witness knew that deceased was childless and knew that the widow of a childless husband was entitled to one-half of his property subject to debts; that witness knew and understood the trust provision that the wife should never get over $200 per month; that he knew one of the objects was that the wife should be limited to $200 per month and no more; that he knew it was deceased's idea to make a total distribution of his property by way of will and declaration of trust and that whatever did not go by the trust went by the will. The said will, the trust instrument, a schedule of securities and a receipt therefor were prepared by Hornsby and signed by him on behalf of the Trust Company. Miltenberger, president of appellant Trust Company, was not called as a witness.

On the above evidence the Court among other things made the following finding; "The Court doth further find that Julius M. Merz, plaintiff's late husband, executed and delivered a conveyance in trust, of date, November 28, 1934, of the property described in schedule A attached thereto and made a part thereof, as hereinbefore found and set forth by the Court, and actually delivered the personal property in his lifetime to defendant Tower Grove Bank and Trust Company,

the trustee therein named, on the 28th day of November, 1934, thirteen days before the date of his death; that he made said conveyance while sick, weak and infirm, and under the care of physicians and while attended by a nurse and while unable to be up and about and while conscious of impending death, with a view and purpose of depriving and defrauding his surviving widow of her statutory estate or marital interests in the personal property described in the conveyance in trust.''

The Court ordered that the conveyance in trust be for naught held as to one-half of the personal property described in schedule A, and that plaintiff recover from said Trust Company one-half of said personal property. We must now determine whether or not the decree to that extent should be affirmed.

Appellant insists (1) that the trust instrument in suit was executed for the purpose of *providing* for respondent and not for the purpose of defrauding her; (2) that the trust instrument is valid regardless of its purpose; and (3) that appellant trustee, in accepting the conveyance, acted in complete good faith.

We are only concerned here with the intent of deceased. In determining the intent and purpose of deceased in executing the trust we may weigh and consider all facts and circumstances in evidence. The condition of deceased's health, his knowledge of his condition and his realization of the near approach of death, his expressions of his desire, intent and purpose; the detailed terms and provisions of the trust agreement, the percentage of his property conveyed in trust, the limitations in the trust agreement as against his wife, the form and content of his previous will, the execution of a new will contemporaneously with the execution of the trust conveyance, the gift of the $20,000 note to his brother, his expressions of satisfaction with his efforts in the disposition of his property, his expectation of death, and his readiness for it; these and all other facts and circumstances in evidence, were for the consideration of the Court. In determining whether or not the deceased intended to defeat and defraud respondent of her marital rights, we cannot presume a fraudulent intent, but it may be inferred when it is a legitimate deduction from all the facts and circumstances in evidence in a given case. [Ulrich v. Pierce (Mo.), 233 S. W. 401, 402.] The evidence in this case has been reviewed at length and a further repetition is unnecessary. The income reserved to respondent was very small as compared with the full and complete ownership of a half interest in the total fund. The continuance of the income was uncertain. It was for her life only. There is both circumstantial and direct evidence of the intent and purpose of the deceased to deprive respondent of her lawful marital rights in the property conveyed. There is evidence that defeating the rights of the wife was the sole purpose of the trust. It is apparent from the trust conveyance that he intended to place the major portion

of his property beyond respondent's control and to limit her to an income of $200 per month for life, and no more. It is true he reserved the right to revoke the trust; that he reserved a joint control over the property as co-trustee and the right to enjoy the entire income during his own life. While these circumstances may be said to look forward, yet under all the circumstances of this case, the deceased for all practical purposes was making disposition of property to be effective after death. We think it is apparent from the evidence that deceased realized he would not be able to exercise this power of revocation, use the joint control, nor live to enjoy this income. He died within a few days after completing these financial arrangements.

We defer to the findings of the trial court and hold that the intent and purpose of the execution of this trust was to deprive and defraud respondent of her lawful marital statutory rights in the property conveyed in trust, and we further hold that the conveyance was testimentary in character and was made in contemplation of and expectation of impending death.

The public policy of this State as evidenced by Section 325, Revised Statutes 1929 (Mo. Stat. Ann., sec. 325, p. 212), is that when a husband dies, without any child or other descendant in being capable of inheriting, his widow shall be entitled to one-half of the real and personal estate belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts. Section 327, Revised Statutes 1929 (Mo. Stat. Ann., sec. 327, p. 215), provides for an election by the widow to take the interest provided by the above section. Section 333, Revised Statutes 1929 (Mo. Stat. Ann., sec. 333, p. 221), provides that the widow may renounce the provisions of her husband's will and take under the statute. Respondent filed her election and has renounced the will. It is not necessary therefore to determine whether or not an election is required for the widow in this case, to take one-half of the personal property without an election. [See Nies v. Stone (Mo. App.), 117 S. W. (2d) 407, 411.] The general rule of law (long in effect in this State) is that a conveyance of property by the husband without consideration and with the intent and purpose to defeat his widow's marital rights in his property, is a fraud upon such widow and she may sue in her own right, and set aside such fraudulent conveyance, and recover the property so fraudulently transferred, to the extent of her interest therein. [Rice v. Waddill, 168 Mo. 99, 67 S. W. 605; Davis v. Davis, 5 Mo. 183; In re Bernays' Estate, 344 Mo. 135, 126 S. W. (2d) 209, 215; Newton v. Newton, 162 Mo. 173, 61 S. W. 881; Straat v. O'Niel, 84 Mo. 68; Tucker v. Tucker, 32 Mo. 464; Tucker v. Tucker, 29 Mo. 350; Stone v. Stone, 18 Mo. 389; Dyer v. Smith, 62 Mo. App. 606.]

In the case of Rice v. Waddill, 168 Mo. 99, 117, 67 S. W. 605, 609, the court in dealing with various transfers of property in fraud of dower said: ". . . a court of conscience will treat these formal-

ities as mere covers of a cunning scheme to defeat her dower and will require the voluntary donees to bring it into court until her dower is apportioned to her. . . . The form of the instrument or the device resorted to is wholly immaterial when the intent to defeat the widow's marital rights is made apparent to the Chancellor.''

In the case of Tucker v. Tucker, 29 Mo. 350, 353, where a deed of gift of slaves was held void as to the widow, the Court said: ''Though the instrument in the case before us is . . . in form a deed, and not technically a will, yet its execution was accompanied with such circumstances as evince a fraudulent intent, and are sufficient, if proved as they are alleged in the petition, to invalidate it. It has such characteristics of a testamentary disposition as to bring it as effectually within the prohibition of the statute as if it had all the technical requisites of a will. If the intent and effect of the deed are the same, the mere form or mode of accomplishing it is immaterial. The petition shows that the deeds were voluntary; that they were made in expectation and anticipation of death, when the decedent was in feeble and declining health.''

Appellant contends that we are dealing with an executed, active, *inter vivos* trust, not testamentary in character, and that title is vested in the trustee and that the trust is valid against the claims of the grantor's widow. Appellant cites the following cases: Sims v. Brown, 252 Mo. 58, 158 S. W. 624; Davis v. Rossi, 326 Mo. 911, 34 S. W. (2d) 8; Coon v. Stanley, 230 Mo. App. 524, 94 S. W. (2d) 96; West v. Miller, 78 Fed. (2d) 479, and many cases from other jurisdictions. We hold that the above cases do not rule the facts before us.

Appellant contends that a wife has no rights in and to her husband's personalty except such as may be possessed by him ''*at the time of his death*;'' that during his life, he can dispose of his property by gift or otherwise as he may choose, free from any claims by his wife; and that to hold otherwise would paralyze commerce and trade and dealings in notes, stock and chattels of all kinds. We are unwilling to repeal by implication the statutes of this State and to say that a husband may by means of a fraudulent conveyance evade the express terms of the statute and that a court of equity is powerless in the premises. Appellant says that if this trust is set aside that then men with bad hearts or lungs or white in their hair must cease to trade and must not undertake to arrange their affairs or dispose of their goods because, since all men know that they must die, that the way is open for a wife to follow every transaction and void it. The answer is that for more than a century the rule has been that the widow may avoid voluntary transfers of property made by her husband in immediate contemplation of death with the intent and purpose to defeat and defraud the widow of her statutory marital rights. Extensive litigation has not resulted. Courts of equity have for years

set aside fraudulent conveyances, and transfers obtained by fraud, without any noticeable paralysis of commerce resulting therefrom...

Appellant insists that it acted in good faith in accepting this conveyance in trust and that therefore this court is powerless to act. Voluntary fraudulent conveyances are set aside for the fraud of the grantor. It is not necessary that there be active positive fraud on the part of the grantee. [Godchaux Sugars v. Quinn (Mo.), 95 S. W. (2d) 82.]

Appellant contends that motive or intent is an unsatisfactory test of the validity of a transfer of property; and that in most jurisdictions this test has been rejected. Appellant insists that by the weight of authority the test applied is essentially a test of whether the husband has in good faith *divested himself* of the ownership of the property or has merely made an illusory transfer. Appellant cites: Newman v. Dore, 275 N. Y. 371, 9 N. E. (2d) 966; Benkart v. Trust Co., 269 Pa. 257, 112 Atl. 62, 63; Wright v. Holmes, 101 Me. 508, 62 Atl. 507. Appellant further insists that the law as declared in this State is without logical foundation; and that cases supporting the rule should be overruled by this court. Appellant would have us hold with Potter Title & Trust Co. v. Brown, 294 Pa. 482, 144 Atl. 401, that the husband may make a voluntary disposition of his personalty during his life even with *intent* to *deprive* his wife of dower; and that the "good faith" required of the donor in making a valid disposition of his property during his lifetime does not refer to the purpose to affect the wife but to the intent to totally *divest* himself of ownership of the property.

We adhere to the rule as applied by this court. We hold that the general rule with reference to voluntary transfers of property in contemplation of immediate death, and with the intent and purpose to defeat, and therefore to defraud, the widow of her marital rights, applies to the transfer to property by the trust instrument in this case. Respondent is entitled to recover one-half of the property so transferred. We rule against appellant on the first three assignments of error.

■ With reference to the fourth assignment of error, we may say that appellant in its motion for a new trial and in arrest of judgment does not complain of any evidence improperly admitted on behalf of anyone, nor does it complain that the judgment was based upon testimony improperly admitted. The matter was not called to the attention of the trial court, and we need not consider it. [Greer v. Carpenter, 323 Mo. 878, 882, 19 S. W. (2d) 1046; Polski v. St. Louis, 264 Mo. 458, 462, 175 S. W. 197; Whitehead v. Bank (Mo. App.), 56 S. W. (2d) 833, 835; Sec. 1061, R. S. 1929 (Mo. Stat. Ann., sec. 1061, p. 1346).] ■ The question of admission of testimony, however, arises with reference to the pleadings. The pleadings are involved in the cross-appeal in this case, and for that reason we have

heretofore outlined the petition. We must now consider the other pleadings. The answer of defendant Adolph Merz *to plaintiff's petition* contained, among other things, a general allegation as follows: "Further answering, this defendant .. . . alleges and asserts the facts to be that said alleged trust deed is now, and was, at the time it was executed, and ever since said time has been, void, a nullity, and of no effect, for the reason that it was executed by Julius M. Merz when he was actually mistaken as to its legal effect and import, and when he was under a misapprehension that it would serve a certain purpose, which was then illegal and fraudulent, and when its practical and legal effect was then entirely misunderstood by him, and when its legal and practical effect were then not, as a matter of fact, his intention, mind or will, and when its legal and practical effect, were, at the time, executed, and ever since said time have been, in direct violation of equity principles, and that the purpose for which said trust was attempted to be created at the time, and ever since said time, has been fraudulent, illegal, and the real purpose impossible of accomplishment, all of which more fully appears in this defendant's cross petition, as executor." The answer then prayed that all of the property transferred to appellant be declared the property of the estate and delivered to the executors and prayed for other relief in the premises.

The answer and cross-bill of Adolph Merz as executor under the will of deceased, *as filed to plaintiff's petition,* alleged facts in detail tending to support the general allegations and conclusions pleaded in the above answer and further charged that the conveyance was wholly voluntary, and without consideration and was executed to prevent plaintiff from gaining the estate; that it did not create a trust for the purpose intended; and that the purpose intended was impossible of accomplishment. The alleged cross-bill continues: "That with sanguine efforts of accomplishing his said purpose, and with his mind finally made up on the plan, which had been molded, formulated and accelerated by the rapid approach of death, which he was keenly conscious of, and while sick, feeble and infirm, contemplating death, and with full expectation that it may come daily, and with the fullest anticipation that the end was not far distant, and knowing that he could not much longer enjoy his property himself, and with the intention and determination of carrying into effect his plan or scheme, for the purpose and object aforesaid, and believing that it would have the effect of circumventing statutory and common-law provisions respecting the rights of surviving widows, as to their property rights in their husbands' estate, and with the single, sole, express, only and specific purpose and object of carrying into effect his plan and scheme aforesaid, and for no other purpose, but not actually knowing of the true legal effect the instrument he was about to execute would have for the purpose intended, the said deceased, on

or about the 28th day of November, 1934, in a race with death, to consummate his plan and scheme before his earthly end, and when he was so feeble and infirm that artificial stimulants were necessary to brace him for the occasion, at the office of the defendant Tower Grove Bank and Trust Company he executed the alleged trust deed, already referred to. . . . That simultaneously with the execution of said alleged trust deed deceased also executed his last will and testament; . . . that both of said documents were executed with the intention of deceased of disposing of his estate, to be effective at his death." It is apparent that said answers were in effect confessions of the allegations of the petition, but with some additional allegations.

Appellant Trust Company, who was a co-defendant of the above answering defendants, construed said pleadings as purporting to state a cause of action directly against it (appellant), apparently because the prayer of said answers requested that the trust conveyance be set aside *in toto*. There is no reference in the pleadings to indicate an intention, other than as set out, of said answering defendants to make their co-defendant (appellant Trust Company) a defendant in said pleadings. Appellant did not demur or move to strike said answers and alleged cross-bills, but did file certain pleadings, purporting to be answers on behalf of appellant Trust Company, to the alleged cross-bills of said defendants. These answers were general denials.

During the progress of the trial, when defendant Adolph Merz sought to offer evidence at the close of plaintiff's case, appellant Trust Company objected to the introduction of any evidence by said defendant on the ground that said answers and cross-bills failed to state facts sufficient to constitute a cause of action against it (appellant), and contended that the court was without jurisdiction on the subject of the cross petitions for the alleged reason that heirs and administrators of fraudulent grantors could not maintain an action to set aside such conveyances. It is on their theory that appellant now contends that the evidence offered on behalf of defendant Adolph Merz, and Adolph Merz as executor, was improperly admitted, and that, without such evidence, the decree was wholly unsupported by evidence.

With the pleadings, as herein indicated, the parties in a hearing, as of one cause, offered their evidence, and in the order above referred to, to-wit, plaintiff, then appellant Merz, and last appellant Trust Company. The court, according to its decree, made its findings ". . . upon the pleadings of all of the parties hereto, and upon the evidence and the proof adduced by them in support of their various pleadings. . . ." In this state of the record appellant still contends that respondent was not entitled to the benefit of evidence offered by appellant Merz, and that the court erred in considering said evidence in rendering judgment.

We hold the evidence offered relevant to the issues as to the validity of the trust conveyance and that respondent was entitled to the full benefit of all of the competent, relevant or material evidence in the record without regard to what party offered the evidence. [23 C. J. 56, sec. 1798; Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297; Storey v. People's Motor Bus Company, 327 Mo. 719, 37 S. W. (2d) 898; New Orleans Railroad Co. v. National Milling Co., 234 U. S. 80, 86, 58 L. Ed. 1223, 1226.]

The assignment is overruled.

The fifth assignment will be deferred until other matters are disposed of on the cross-appeal. The cross-appeal of appellants, Adolph Merz, Adolph Merz as executor, and Jean J. Merz, arises by reason of the following part of the trial Court's decree, to-wit: ''The Court doth further find the issues herein joined to the cross-bill of defendant Adolph Merz, one of the executors of the will of Julius M. Merz, in favor of plaintiff and the other defendants, and doth further find, adjudge and decree that defendant Adolph Merz as one of the executors of the will of Julius M. Merz, is without capacity, authority or right in law to challenge the validity of the conveyance in trust, of date, November 28, 1934, and that his cross-bill be and is hereby dismissed; that the conveyance in trust of November 28, 1934, as to one-half of the property described . . . after delivery of one-half thereof to plaintiff, is hereby adjudged to be a valid conveyance thereof to defendant Tower Grove Bank and Trust Company, trustee therein named.''

In the cross-appeal appellant Adolph Merz as executor of the estate of deceased, Adolph Merz, and Jean J. Merz assigned error (1) on the Court's failure to declare the trust void *in toto*. They contend (a) that the instrument was testamentary in character; (b) that the deceased was imposed upon by Trust Company; (c) that Trust Company is guilty of fraud in law; and (d) that the trust instrument was executed under mistake and misapprehension. Appellants' second assignment is, that even if the proposed trust is valid in part and invalid in part, that the trial court erred in not expressly holding that respondent is entitled to no further claim to any income from the trust fund, because, having repudiated the trust instrument, and having had the trust declared void as to her, she can claim nothing further thereunder.

The appellant Trust Company (respondent as to this appeal) contends (1) that these appellants as heirs and legal representatives of a fraudulent grantor cannot question the validity of the trust conveyance; (2) that the conveyance was not testamentary in character; (3) that the record fails to show any fraud or inequitable conduct on the part of Trust Company or its officers; and (4) that there was no mistake of fact, but only mistake of law, against which equity will not relieve. Such are the issues of the cross-appeal.

We have heretofore reviewed the pleadings and the evidence. We have set out the findings of the trial court, (1) as to the physical condition of the deceased at the time of the transfer, (2) as to the deceased's consciousness of impending death, and (3) as to the purpose of said trust conveyance. We have concurred in said findings, since from reading and re-reading the record in this case we have arrived at the same conclusion as to the true facts in this case. We must now determine whether or not the court erred in failing to set aside the trust conveyance *in toto* and ordering the remaining half of the property over, and above plaintiff's part, to be delivered to the executors under the will of deceased.

The record in this cause would indicate that the decree was based upon the alleged insufficiency of the alleged cross-bill and of the capacity and authority of Adolph Merz, as executor, to maintain an independent suit and challenge the validity of the trust conveyance. Here, however, the validity of the trust conveyance was assailed by the petition. The jurisdiction of a court of equity was invoked upon the facts therein stated. All parties in interest were made parties to the proceeding. All of the appellants in this cause were co-defendants. The court was not trying one cause of action as between respondent and appellants and another between appellant Trust Company and the other appellants. The court was investigating the validity and sufficiency of the trust conveyance. In such proceeding all parties in interest are necessary parties. There is no contention that all were not represented. Appellant Merz by his answers was not injecting a new cause of action. " 'The statutes relating to pleadings do not authorize one defendant to inject into the plaintiff's suit an independent suit, either at law or in equity, against his co-defendant, not necessary or germane to his defense to the plaintiff's suit, and the relief that may be granted to one defendant against another is only such as is incidental to his defense.' " [Mo. Dist. Telegraph Co. v. S. W. Bell Telephone Co., 336 Mo. 453, 79 S. W. (2d) 257, 260, and cases cited.] "Furthermore the provision in Section 1071, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1071, p. 1372), that the judgment may determine the ultimate rights of the parties on each side as between themselves, does not make co-defendants adversaries." [Mo. Dist. Telegraph Co. v. S. W. Bell Telephone Co., supra.] This court is limited by the issues made by the pleadings. [Munford v. Sheldon, 320 Mo. 1077, 9 S. W. (2d) 907, 909.] And a decree outside the record is invalid and has been held void even when attacked collaterally. [Friedel v. Bailey, 329 Mo. 22, 44 S. W. (2d) 9, 15; 21 C. J. 671, sec. 854; 10 R. C. L. 555, sec. 338.] But here the petition attacks the entire conveyance as fraudulent, and as testamentary in character, and all interested parties are brought in. This court is not bound by the specific prayer of the petition. However in this case general relief was asked. The prayer of a petition is no part of

the cause of action, and a court of equity will give proper relief on the facts stated and established. [Rains v. Moulder, 338 Mo. 275, 90 S. W. (2d) 81, 85; State ex rel. v. Dearing, 180 Mo. 53, 63, 79 S. W. 454; State ex rel. St. Louis v. Crow, 171 Mo. 272, 279, 71 S. W. 132; Musgrove v. Macon County Bank, 187 Mo. App. 483, 496, 174 S. W. 171.] In one trial the court heard all of the evidence. There was no objection to the introduction of evidence, except as herein stated. All of the evidence was for the Court's consideration. The trial Court reached a conclusion on the facts in evidence, and we have arrived at the same conclusions, but the court was not limited by the pleadings of the defendants, or otherwise, under the record in this case, to only set aside the trust conveyance to the extent of the plaintiff's interest in the property conveyed in trust. We have ruled that an equity court is not limited to setting aside only so much of a fraudulent transaction as will cover plaintiff's interest. It may restore the *status quo*. [Vordick v. Kirsch (Mo.), 216 S. W. 519; Weller v. Collier, 199 S. W. 974.] There is the further rule that equity having once acquired jurisdiction, will retain it, under a prayer for general relief, to administer full and complete justice, within scope of pleadings and evidence, between the parties. [Rains v. Moulder, supra; Jones v. McGonigle, 327 Mo. 457, 37 S. W. (2d) 892, 895; Phelps v. Scott, 325 Mo. 711, 30 S. W. (2d) 71, 75.] Is appellant Trust Company (respondent as to this appeal) in a position to urge upon this court, that no relief be granted appellant Merz as executor under the will of deceased?

Appellant Trust Company contends it acted in good faith; that it did not advise deceased; that its advice was not asked for; that deceased acted like he knew what he wanted; that at the outset it did not know the amount of assets to be conveyed; and that it thought deceased was worth more than he was. On the other hand the action and conduct of the deceased testified eloquently as to his confidence in appellant Trust Company's competency and qualifications to handdle his business and assist him in accomplishing the results desired. He trusted appellant Trust Company to draw an instrument by which over $300,000 in assets were delivered to it as trustee, and the trustee was authorized to invest and re-invest the proceeds of the trust estate. Appellant Trust Company was in a most receptive mood. It wanted the trust, its officers knew that the proposed trust would be beneficial to it. Appellant's own witness quoted the president of Trust Company as saying deceased was a very rich man and "that there was a will and a trust we ought to get." Appellant's agent knew that deceased was not law trained; and they learned the amount of the proposed trust estate before the instrument was drawn. They knew that one of the purposes of the trust was to limit the wife to $200 per month and no more. They knew that the safety deposit boxes were substantially emptied and their contents included in the

trust fund; and that the intention of the deceased was to make total distribution of his property; and that what did not go by the trust was to go by will. They knew deceased was married and had no children, and well knew that under such circumstances that the widow would be entitled to one-half of the estate subject to debts. Its officers knew that he proposed to execute a trust to it that would be beneficial to it; and yet not accomplish the apparent primary purposes intended by deceased. Can we say that the circumstances imposed no duties or obligation to advise deceased or refuse the trust when they knew, or ought to have known, the real purpose of the trust was certain to fail. Apparently the benefits being conferred upon the grantee caused the grantee to remain silent. There was evidence that the agreement was represented as "iron-clad" and "bullet-proof." Under the circumstances is a court of equity to hear the suggestions of the appellant Trust Company that this court should not avoid the trust *in toto* because appellants Adolph Merz and Adolph Merz, as executor, is an heir and legal representative of a fraudulent grantor. We decline to hold that the circumstances prevent this court from granting full relief.

This court may properly vacate and set aside this trust conveyance *in toto,* even though the results may be beneficial to the heirs and legal representatives of a fraudulent grantor. [Vordick v. Kirsch, supra.] Again, where it would be a greater wrong to permit the transferee to hold the property than to permit recovery by the heirs of the deceased, they may recover, notwithstanding the deceased's purpose in executing the trust was fraudulent. The deceased and appellant Trust Company did not stand on an equal footing. There is no evidence that the deceased knew that the sole purpose of the trust would fail, but appellant Trust Company, knew, or under the facts here, ought to have known it, but nevertheless permitted the transfer to be made. The circumstances of this case present nothing to prevent us from granting full relief to the heirs and legal representatives of deceased. [Snitzer v. Pokres, 324 Mo. 386, 23 S. W. (2d) 155, 161; Lindsley v. Caldwell, 234 Mo. 498, 505, 137 S. W. .983; Holliway v. Holliway, 77 Mo. 392; Poston v. Balch, 69 Mo. 115; Hobbs v. Boatright, 195 Mo. 693, 93 S. W. 934.] In the above case of Lindsley v. Caldwell the plaintiff had transferred shares of stock to defendant, an attorney, as a part of a fraudulent scheme and defendant retained the stock. Plaintiff sued in equity to have defendant declared trustee of the stock for plaintiff. At page 505 of the opinion, the court said: "The defendant, recognizing no doubt the weakness of his position so far as his attempt to hold this stock as security for his fees is concerned, defends upon the further ground that the transfer of this stock to him by Stevenson was made for the purpose of hindering and delaying the creditors of Stevenson; and he invokes the rule that where a conveyance is made for such purpose, and an attempt

is made by the grantor to regain the property, equity, because of the corrupt purpose which prompted the conveyance, will leave the parties where it finds them. We are of the opinion, however, that this unhappy defense is not available to the defendant. The rule which he invokes does not apply to a case like this, . . . ''

■ In its reply brief Trust Company contends that the above rule of law cannot be applied to the evidence in this case for the reason that the cause was not tried on the above theory. Let us see. The petition charged a fraudulent transfer to appellant Trust Company under a plan and scheme to defraud respondent of her marital rights; that the signatures of the parties had been attached to the trust agreement; and that appellant had accepted the burden of executing the trust. Proof of execution of the fraudulent transfer by decedent directly involved the acceptance thereof by appellant Trust Company and its participation in drafting the trust agreement. There was no contention at the trial that evidence as to the relationship of the parties, the participation of appellant Trust Company in the execution of the trust agreement, and its alleged representations, as to its legality and effectiveness, was not within the issues made by the pleadings. Appellant Trust Company to support the issues in its behalf called as a witness its vice-president and trust officer and offered evidence as to the execution of the trust instrument by its said officer. The facts are all in the record and this court must apply the applicable rules of law to the pleadings and evidence appearing in the record.

In view of the conclusions reached, it is unnecessary to pass upon the other reasons urged by the appellants in the cross-appeal for vacating the trust conveyance in its entirety. It is also unnecessary to consider the second assignment of error on the cross-appeal.

■ There remains only the fifth assignment of error by appellant Trust Company.

The decree entered in favor of respondent required appellant Trust Company to turn over to plaintiff (respondent) one-half of the assets of the trust estate as delivered to the trustee, together with income, interest, and profits thereon, subject only to the payment of one-half of the estate taxes and income taxes paid. No mention was made as to compensation for the trustee, or as to any attorney fees or expenses incurred on behalf of the trust estate. Appellant Trust Company complained thereof in its motion for a new trial, and now has assigned error thereon.

We do not find this matter to have been covered by the pleadings or evidence in the court below. All pleadings on behalf of appellant Trust Company were general denials. No evidence as to expenses or claims for compensation was offered at the trial. Appellant Trust Company as trustee after entering of the decree, filed a motion to modify the decree so as to allow recovery by respondent subject to

compensation to the trustee and expenses incurred. The motion was overruled. Defendant Trust Company as executor also filed a motion to modify requesting delivery of the property to it for payment of claims against the estate and costs and expenses. This motion was overruled. Only the Trust Company as trustee appealed. In view of the record in this case, we hold that the court did not err in refusing to deduct trustee's fees, attorneys' fees, or other expenses from said fund.

The decree is affirmed as to the issues involved in the appeal in cause No. 35,770 and reversed and remanded as to cause No. 35,769 with directions to declare the trust conveyance void *in toto* and direct the remaining one-half of the property, after the delivery of one-half to respondent, to be delivered to the executors under the will of Julius M. Merz, deceased, and direct that in any future settlement between respondent and the Tower Grove Bank & Trust Company and Adolph Merz, as executors under the will of Julius M. Merz, deceased, she shall be charged with the total amount recovered by her in cause No. 35,770, in determining when she shall have received one-half of the real and personal estate of said deceased, subject to debts; and for further proceedings not inconsistent with this opinion. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur, except *Hays, P. J.,* absent.